Laughlin v. Wagner.

H. W. LAUGHLIN *et al. v.* H. L. WAGNER *et al.*

(*Jackson.* April Term, 1922.)

1. **COVENANTS.** Restrictions to residence purposes valid.

An owner of land in selling a portion of it may restrict its use to residential purposes for the benefit of himself and those to whom he sells other portion with similar restrictions. (*Post, p.* 653.)

2. **ESTOPPEL.** Facts held not to raise an estoppel against enforcement of building restriction.

That the grantee of a lot fronting on two streets, B. and M., and extending around two sides of the lot on the corner, is permitted without objection to erect a business building on the part fronting on M. street and extending back-over the part forming the common base for the two frontages, leaving the portion fronting on B. street too small for residential purposes, does not estop his grantor and others from insisting on enforcement of the restriction in his deed that any house on the B. street side should be used for residence purposes only. (*Post, pp.* 653, 654.)

3. **INJUNCTION.** Encroachment of business held not such that restriction of use to residential purposes would not be enforced.

Enforcement of restriction in deed of lot to use for residential purposes will not be denied on account of encroachment of business in the vicinity; it not being such that the use of the lot for business purposes would not materially affect the value or use for residential purposes of the remaining lots of the grantor. (*,Post, pp.* 654, 655.)

4. **COVENANTS.** Building restriction construed in favor of free use of property.

Restriction in deed of lot fronting on two street, B. and M., and extending around two sides of the lot on the corner, that any

house erected on the B. street side should be used for residence purposes only, will be construed in favor of free use of property, to allow of business property on that part of the lot forming the common base of the two frontages. (*Post, pp.* 655-657.)

5. **COVENANTS.** Restriction to use for residence purposes construed. Restriction, in deed of lot fronting on two streets, B. and M., and extending around two sides of lot on the corner, that any house erected on the B. street side should be used for residence purposes only, permits any use of that part of the lot which would be consistent with its use for residential purposes only, as for decorative purposes; such as flower beds or a walkway, there being no building on it, but does not permit it being used in such a way that the manifest purpose would be to serve the business houses on the remainder of the lot and the corner lot, as by affording an intentional passageway or entrance thereby, by a concrete driveway or otherwise. (*Post, pp.* 657-659 )

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— HON. F. H. HEISKELL, Chancellor.

G. J. MCSPADDEN, for appellants.

A. B. KNIPMEYER, for appellees.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

This is a proceeding for an injunction brought by the complainants, Laughlin and others, against Wagner and his wife, seeking to restrain them from erecting a business house upon a certain lot in the city of Memphis, and from

using that lot for any other purpose except residential, and purposes incident to a dwelling house.

The relief is predicated upon the contention that the lot in question was sold to the defendants, subject to its limited use for a dwelling house or a residence.

Some time prior to the year 1910 one of the complainants, V. A. Voegeli, was the owner of a tract of land of about 10½ acres, situated just north of and adjacent to Madison avenue in the city of Memphis. He formed the desire of developing this property into a residential section, and in pursuance thereof opened a street through the property running northward from Madison avenue. The new street that was laid out was called Belvedere street. There were 35 of these lots, all of which were laid out to front on Belvedere street, except those lots which lay adjacent to Madison avenue. Lot No. 34 was laid out in the form of an "L." It had a frontage on Belvedere street of 50 fet, and about the same frontage on Madison avenue, there being another lot, apparently not a portion of this subdivision, on the corner which filled up the space between the two legs of the "L." Lot No. 34 was sold to a man by the name of Yates, and the deed therefor conveyed the title in fee simple, except that it contained a restriction in the following words, to-wit:

"Any house erected on the Belvedere side be used for residence purposes only, to be two stories or more in height, and to be built on established house lines."

The defendants purchased this lot from Yates, and the deed to them contained no restrictive clause whatever. Practically all of the other lots had been sold, and in nearly, but not quite all, of the deeds of these other lots, there were restrictive clauses, the language of which differ-

ing somewhat in form. In some of these deeds the restriction was in language like this:

"It.is understood that said property is to be used for residence purposes only; that any residence erected thereon shall be erected so as to conform to the established property line on said street, and shall be at least two stories in height."

In other deeds the restriction was that the improvements to be made on said lot was to be a two-story residence. All of the deeds containing the restrictive clauses evidence a purpose to restrict this territory so as to make it a residential section.

The complainants consist of the original owner of said division and the purchasers of some of these lots holding them under restrictive deeds such as has been stated.

Some time before the bill in this case was filed there had been erected upon that portion of lot No. 34 which fronts on Madison avenue a mercantile building, which extended northward as far as that lot extended in that direction, but there was a space of some 25 feet between the western line of that building and the drug store, which occupied the corner lot. So that, the portion of lot 34 fronting on Belvedere street had a depth of something like 100 feet or less. Before the bill was filed and defendants who owned the drug store on the corner, as well as all of lot No. 34, determined to extend the drug store building northward so as to take in a portion of lot 34 on Belvedere street, and to construct a building on a vacant lot between the drug store and the other building, extending it still further back onto lot No. 34, for the purpose of affording an entrance from Belvedere street to the Mercantile building which fronted on Madison avenue, and to the building which it

proposed to erect between the drug store and the other building, as well as to the drug store itself. The defendants also had on this lot 34 fronting on Belvedere street a small metal garage. The purpose of the bill was to perpetually enjoin the defendants from making the proposed use of this lot No. 34.

The question presented is whether or not the complainants are entitled to restrain this use, and this depends upon the interpretation of the restrictive clause in the deed to the defendants, or their predecessors in title, and other considerations which will hereafter be referred to.

It was admitted in the answer of the defendants that they proposed to extend the rear of their drug store building back a distance of 6 feet onto lot No. 34, and that they proposed to erect a mercantile building fronting on the north side of Madison avenue, and to occupy the space between the drug store building and the other building which fronts on Madison avenue, back upon lot No. 34, so as to make it the same length as the drug store when extended. Under this arrangement there would be a side entrance to the proposed mercantile building, which latter building the defendants expected to be occupied for a retail meat market.

The answer admits that the defendants proposed to build a concrete or granalithic pavement on the 50-foot square of lot 34, which fronts on Belvedere street, and which is immediately in the rear of the drug store, and in the spaces not so covered defendants proposed to have flower beds and grassplats. The answer does not state the purpose of the pavements which were to be built on this portion of the lots, but it is quite evident that the paving of this portion of the lot is in no way incident to its use as

a dwelling, and that it would afford an entrance from Belvedere street, both to the drug store on the corner and the Mercantile Building which faces on Madison avenue, and extends back opposite the front of the lot on Belvedere street.

The chancellor was of the opinion that the complainant was entitled to the relief sought, and decreed:

"First. That the injunction heretofore issued in this cause be, and the same is hereby, declared and decreed to be permanent in its nature, and effect that the defendants H. L. Wagner and Bessilee Wagner, their heirs and assigns, be, and they are hereby, forever enjoined and prohibited from building any house on the Belvedere side of the said lot 34 to be used for any purpose except for residence only, the same to be two stories, or more, in height, and to be built on the establishment house line, and that said defendants, their heirs and assigns be, and they are hereby, forever enjoined and restrained from extending and erecting the brick building now situated at the northeast corner of Madison and Belvedere boulevard, and now used as a drug store, back on the lot 34, and from extending and building any garage on the Belvedere front of said lot, and from extending the building immediately east of said brick building and drug store on to any part of said lot 34, and from using said brick building, now used as a drug store, and said other building, now used as a butcher shop, as the means of ingress to the said building and to the brick building that now extends across lot 34, approximately 50 feet, from Belvedere boulevard, for the purpose of transporting goods, wares, and merchandise across the Belvedere front of said lot, and from using the said Belvedere front of said lot for any other purpose than as a

means of ingress and egress to the building situated there-upon and used for purely residential purposes.

"Second.   That the defendants H. L. Wagner and Bessilee Wagner, their heirs and assigns, be, and they are hereby, commanded to remove the temporary tin, or sheet iron, garage from the said lot within 30 days from this date, which garage is fully described and set forth in the original bill in this case, and they are further commanded to keep said lot forever clear of any such structure."

This decree of the chancellor was in all respects affirmed, on appeal, by the court of civil appeals.

Unquestionably it is an established rule of law that a person owning a body of land may sell portions thereof and make restrictions as to its use for the benefit of him-self as well as those to whom he sells other portions of the land, and he may invoke the remedy of injunction to pre-vent a violation of the same, in proper cases, provided of course the restriction is not against some public violation. There is certainly good reason in this rule when applied to the common practice of inserting in deeds a restriction such as tends to create a residential section against those uses which would tend to mar the beauty and detract from the value of the property by uses inconsistent with the uses intended.   In such deeds the grantee does not acquire an absolute and unqualified title, but it is a part of the title which he accepts, that the use of the land shall be limited and be restricted in use as provided by the deed. 13 Cyc. 718; 7 R. C. L. 1114; Pomeroy's Equity, vol. 2, section 1695.

It is contended by the defendants that the complainants are estopped from insisting upon the enforcement of the restrictive clause in this deed, for the reason that they

permitted a building to be constructed on that portion of the lot which fronts on Madison avenue, and extending back upon that portion of the lot which fronts on Belvedere street, so as to leave that portion of the lot fronting on Belvedere street of such limited size as to prevent its use for residential purposes, and so as to comply with the restrictive clause. This contention is unsound, for the reason that the condition complained of was brought about by the defendants or their predecessors in title, with whom they are in privy, and they cannot take advantage of the condition thus created merely because the complainants permitted them to do it.

Another defense is that the growth of the city and the development of business in that section has been such as that the enforcement of this restrictive clause would be inequitable. The principle involved in this defense has been recognized by the courts in those cases where the development of the business has had the effect to destroy the very purpose of the restriction, and the proposed use of the property would in no way inure to the benefit of the other property. Devlin on Deeds, section 991-C.

But the facts in this case do not justify the application of that doctrine. It does not appear that there had been such encroachments in the vicinity of this property as that the use of this lot for the purposes aforesaid would not materially affect the value or the use for residential purposes of the remaining portions of the land.

The restrictive clause in this deed being valid and not contrary to public policy (Devlin on Deeds, section 991-B), and enforceable in equity by the original grantor and by property owners who purchased other property from him in the vicinity who hold their property largely under similar

Laughlin v. Wagner.

restrictive clauses, it remains to apply the rule to the situation shown to exist.

It is quite clear that the clause requiring the house to be erected on the Belvedere side to be used for residential purposes only would be violated by the extension of the drug store along the front of this lot next to Belvedere street, and to the extent that the decree enjoined that proposed action it must be affirmed. Whether the extension of a building to be erected on that portion of the lot fronting on Madison avenue back to a point opposite and behind that portion of it which fronts on Belvedere street, and whether or not the portion of the lot immediately fronting on Belvedere street can be put to the proposed uses, is more difficult to determine, since it involves an interpretation of the restrictive clause itself as applied to the peculiar shape of the lot. As has been said, this lot No. 34 is in the form of an "L," one leg of which fronts 50 feet on Belvedere street and the other leg fronts about the same distance on Madison avenue, thus leaving a square at the northeast corner of the lot which might properly be said to belong to either the Belvedere street side or the Madison avenue side.

In the construction of these restrictive clauses it is, of course, the duty of the court to give them a fair and reasonable interpretation taking into consideration the position and situation of the parties to ascertain and determine the true meaning of the language used. But where the clause is susceptible of two different constructions, one favorable and the other unfavorable to the free use of the property, that construction should be adopted which assures its free use. A literal interpretation which would amount to a mere evasion of the real intention of the parties is not jus-

tified, but, if the clause may be given a reasonable interpretation in favor of the free use of the property, it should be done. Devlin on Deeds, section 991-A. 7 R. C. L.; 1158.

With this rule in mind it is fitting to draw the line between the Belvedere side and the Madison avenue side. The Madison avenue side may reasonably be called the full extent of the lot running back from the frontage on that side, just as the Belvedere side might well be called that portion of the lot which extends to the limit back of the portion fronting on the Belvedere side. The free use of the property rather than the restricted use is favored, by saying that all that portion of the lot which extends back from Madison avenue is its Madison avenue side, and that the Belvedere side of the lot stops when it strikes the line running north from Madison avenue. This interpretation of the restrictive clause will permit the construction of a building running all the way directly behind the front of the lot on Madison avenue, but will not permit the construction of any other sort of a building than residence on the lot west of that line; so that we hold that the Belvedere side of this lot extends the full width of its frontage on Belvedere street until it reaches a point opposite the extension of the west boundary line of that portion of the lot which fronts on Madison avenue. This construction will of course allow the construction of a mercantile building east of the drug store and northward to the northern boundary line of the lot.

An argument against this interpretation is that this would destroy the use for residential purposes of that portion of the lot fronting on Belvedere street, since the depth of some 50 feet would not permit a compliance with the clause. But this argument must yield to the fact that the

Laughlin v. Wagner.

owner had the right to use all of the lot fronting on Madison avenue for any legitimate business purpose, and his election to do so would only operate to prevent his making use of the remaining portion of the lot for any other purposes than prescribed by the restrictive clause, and if such action operates to prevent a use of the Belvedere side for residential purposes, it is his own act that has occasioned this situation, and is, of course, his misfortune. He cannot be permitted to exceed rights acquired by his deed by virtue of his own act which operates to prevent him from the full exercise of rights he otherwise would have had.

On the Belvedere side of the lot, as hereinbefore determined, there had been erected a temporary structure used as a garage or a car barn. The chancellor properly required by mandatory injunction the removal of this building as such a building clearly violates the restrive clause, which requires that any house erected thereon be used for residence purposes only.

The next question is whether the Belvedere side of the lot as hereinbefore determined can be used for proposed purposes as serving as an entrance for the drug store on the corner and the mercantile buildings which front on Madison avenue. The decree, being reviewed, enjoins the defendants from making use of the Belvedere side of the lot as a means of ingress to the drug store and other buildings on the other lots, and from making any use whatever other than a means of ingress and egress to buildings used purely for residential purposes.

The argument in support of this decree is that this restrictive clause should be construed to relate to the use of the lot, and that it means that, whether a house be erected

146 Tenn.—42

on the Belvedere side or not, the intention was to prevent its being used in connection with any other kind of house on any of the other lots, where such other purposes were permissible under the restrictive clause, and to say that it might be used in connection with the other buildings would be but evasion of the real intention of the parties.

We think a fair interpretation of the restrictive clause in question would permit any use of the Belvedere side of the street which would be consistent with its use for residential purposes only. The clause does not require that a dwelling house shall be erected on the lot, and it is not intended to prohibit all uses thereof unless the house is built. It was evidently intended to prescribe the kind of building which should be erected, and the manner of and the particular use which should be made of the building itself. In other words, if the building had in all respects complied in form and location with that suitable as a residence, nevertheless the building could not be used for purposes not ordinarily and reasonably connected with such a use. On the other hand, whatever the character or form of the building, it would be permissible to use it for residential purposes, and if there be no building at all, it could be used for purposes consistent with and incident to its use for residential purposes.

From this interpretation it follows that the Belvedere side of this lot could not be made use of in such a way as that the manifest purpose would be to serve the business houses adjacent to it. For example, it could not be used as affording an intentional passageway or entrance into the business house. Any structure, whether strictly a house or not, such as a concrete driveway, which devotes the use of the property to the carrying on of a business,

would be violative of this clause, but the use of the lot for decorative purposes, such as flower beds or as a walkway on the lot itself, would not violate the manifest intent and purpose of this clause.

In other words, any use of this lot which might be reasonably incident to its use for residential purposes is permissible, but it is not permissible to put the lot into service as an incident to the business houses on the adjacent portion of the lot.

Since the decree may be fairly interpreted as excluding some proper uses of this lot, it will be modified, keeping in view what constitutes the Belvedere side as hereinbefore defined, so as to prohibit its use as a means of ingress and egress, and for all other purposes incident to the business that may be conducted upon the drug store lot, or the Madison avenue side thereof, but so as to allow its use by the owner for purposes reasonably incident to residential purposes. This does not mean that the defendants may not use it for flower beds or for walkways, but it does mean that no portion of the Belvedere side can be used as a means of service to the business being conducted upon the adjacent lots or portions of the lot.

The costs incident to the appeal will be divided and paid, one-half by the complainants and the other one-half by the defendants.