Bradford J. LAPRAY, Phil Whaley, David Blair, Jim Davis, Carol Power, Auble Chesney, Kaye Buckley, Janet Spillman, R.A. Feder, Rodney F. Smith, Clayton Weaver, Martin W. Carr, Chuck Davis, Patricia A. Bohnert, Robert D. Frye, James W. McCammon, J. Patrick White and Ronnie L. Reed, Plaintiffs–Appellees, Appellants,

v.

Ronald Wayne SMITH, Defendant–Appellant, Appellee.

Court of Appeals of Tennessee, Eastern Section.

Nov. 9, 1990.

Application of Both Parties for Permission to Appeal Denied by Supreme Court Jan. 28, 1991.

**88**

James H. Ripley, Sevierville, for plaintiffs-appellees, appellants.

Norman G. Durham, Sevierville, for defendant-appellant, appellee.

## OPINION

GODDARD, Judge.

In this restrictive covenant case, both the Plaintiffs and the Defendant appeal portions of the Trial Court's judgment. The Chancellor, upon trial of the case below, issued a permanent injunction against the Defendant's using restricted property as a means of access to other adjoining unrestricted property. The Defendant appeals issuance of the permanent injunction.

The Plaintiffs filed a post-trial motion seeking to modify the permanent injunction so as to further enjoin the Defendant from continuing utility hook-ups in the restricted residential subdivision, and running the utility lines across his restricted-use property within the subdivision to service the adjoining unrestricted property. The Plain-

tiffs' motion was denied, and the Plaintiffs appeal the Court's denial.

The issues on appeal are:

1. Whether the Chancery Court's injunction against the Defendant's use of his restricted property as a means of ingress to and egress from adjoining unrestricted property is a proper enforcement of the covenants which restrict White Oak Subdivision.

2. If injunctive relief is proper, whether the injunction order issued by the Chancellor is too broad, thereby imposing an undue burden upon the Defendant.

3. Whether the Chancellor abused his discretion in refusing to grant the Plaintiffs' motion, made pursuant to Rule 15.-02 of the Tennessee Rules of Civil Procedure, to amend the Court's judgment so as to include an injunction against utility service.

All the Plaintiffs and the Defendant are landowners in White Oak Subdivision in Sevier County. As of July 18, 1989, the Defendant became the owner of Lot 26, a vacant lot in the subdivision. The Defendant also has a revocable beneficial interest in certain unrestricted property outside White Oak Subdivision, part of which property adjoins Lot 26. The adjoining unrestricted property is owned by the Defendant's parents.

White Oak Subdivision property is bound by restrictive covenants, pertinent portions of which read as follows:

2. *LAND USE:* All lots and tracts shall be designated and used for (single) one family homes, no duplexes.

3. All residential dwellings shall have not less than the following square feet of living area or floor space on the first or main floor:

(a) One story dwelling–1250 square feet.

(b) Two story dwelling–1000 square feet on main floor.

No structure shall be moved onto any lot or tract. No exposed concrete block shall be left visible on any bed. No metal roofs shall be permit[ted.]

4. No mobile homes, trailers or modular type units sh[a]ll be placed or main-

tained on any part of said land either temporarily or permanently.

5. *DWELLING LOCATION:* No dwelling shall be located nearer than thirty (30) feet to any front or ten (10) feet to any side property lines.

6. No fiberglass houses unless approved by developers.

7. No house is to be lived in unless completed.

Shortly after the Defendant obtained ownership of Lot 26, he received permission from his father to place a mobile home on approximately 100′ × 100′ of the above-mentioned unrestricted land immediately adjacent to Lot 26. The Defendant then placed the trailer on the adjoining property.

Thereafter, the Defendant knocked a driveway space hole in the street curbing that fronts Lot 26 in White Oak Subdivision, and began driving across Lot 26 from the restricted subdivision in order to reach his house trailer on the adjacent unrestricted property. The house trailer has been used as a single family residence, and no commercial activities have been conducted on the property. The driveway does not connect to any road or any other drive, nor does it permit any other entrance into or exit from the subdivision.

■ The Defendant argues that he has not violated the residential-use-only restriction since he has simply utilized Lot 26 as a front yard and driveway to a single family residence, and for no other purpose.

The Plaintiffs argue that the Defendant's use of Lot 26 as merely a driveway and front yard to the adjoining unrestricted property allows him to effectively incorporate unrestricted property into the White Oak Subdivision, thereby subverting the benefits to all of the subdivision property owners that were intended by the restrictive covenants.

The Chancery Court's order permanently enjoins the Defendant from "constructing, maintaining, and/or using Lot # 26 in the White Oak Subdivision of Seymour, Tennessee as a roadway, driveway, accessway, on and across the same, for the purpose of providing access, being ingress or egress, to the adjoining property."

■ Restrictive covenants on real property are to be recognized and enforced according to their terms. *Land Developers, Inc. v. Maxwell,* 537 S.W.2d 904 (Tenn. 1976). Because such covenants hinder the otherwise free use and enjoyment of property, they are to be strictly construed, with all doubts resolved in favor of the free use of one's property. *Parks v. Richardson,* 567 S.W.2d 465 (Tenn.App.1977); *Land Developers,* supra. Nonetheless, the words of a restrictive covenant should be given a fair and reasonable meaning in order to effectuate the covenant's purpose. *McDonald v. Chaffin,* 529 S.W.2d 54 (Tenn. App.1975); *see also Benton v. Bush,* 644 S.W.2d 690 (Tenn.App.1982).

The Defendant correctly cites *Laughlin v. Wagner,* 146 Tenn. (19 Thomp.) 647, 244 S.W. 475 (1922), in support of his proposition that it is not necessary to build a house on Lot 26 in order for him to make residential use of the property. But *Laughlin* does not support the Defendant's implied argument that residential use of unrestricted property is the only important concern in determining whether such unrestricted property may be used in conjunction with adjoining restricted property. In *Laughlin,* the defendant intended to use property restricted to residential use as a passageway—albeit decoratively landscaped with flower beds and grassplots—to commercial enterprises on adjoining unrestricted property. The *Laughlin* Court decided

to prohibit [the restricted property's] use as a means of ingress and egress, and for all other purposes incident to the business that may be conducted upon the drug store lot ... but ... to allow its use by the owner for purposes reasonably incident to residential purposes. This [did] not mean that the defendants [could] not use it for flower beds or for walkways, but it [did] mean that no portion of the Belvedere [restricted] side [could] be used as a means of service to the business being conducted upon the adjacent lots ....

146 Tenn. (19 Thomp.) at 659, 244 S.W. at 478.

In the instant case, the restriction is not merely concerned with residential versus business uses of the restricted properties. In some detail, it evidences the intentions of its makers to restrict the types of residential structures that are permitted within the subdivision: Duplexes are prohibited; all dwellings must have a certain minimum square footage of living area or floor space; no structure is to be moved onto any lot or tract; no exposed concrete blocks are to be left visible on any bed; no metal roofs allowed; "[n]o mobile homes, trailers or modular type units sh[a]ll be placed or maintained on any part of said land either temporarily or permanently"; no house is to be lived in unless completed.

The Defendant's house trailer, located just beyond Lot 26 and to which the Defendant has made ingress and egress by way of Lot 26, is plainly not the type of residential structure allowed by the provisions of the White Oak Covenant. *See* Exhibits 5, 6, 9, 10, T.R. Vol. II, pages 65–70. Yet, the Defendant seems to argue that, so long as the structure is used as a residence, then he should be allowed access to it by way of White Oak Subdivision Lot 26. We do not agree.

Just as the *Laughlin* Court did not allow restricted property to be used in conjunction with adjoining unrestricted and non-conforming property, so the present Defendant must not be permitted to subvert the plain restrictions of the White Oak Covenant by using Lot 26 merely as a "front yard" to unrestricted and non-conforming adjoining property.

Perhaps, if the Defendant had both the authority and the willingness to restrict the property outside the subdivision to the same extent as Lot 26 is restricted, a different question would be presented. In a similar restrictive covenant case in Ohio, *Bove v. Giebel,* 169 Ohio St. 325, 159 N.E.2d 425 (1959), the defendants offered at every stage of the proceedings to subject the property adjoining a restricted residential subdivision to the same restrictions

that applied within the subdivision. The Ohio Supreme Court reasoned as follows:

As to property in a subdivision, that is restricted to use for residence purposes only, there have been decisions preventing its use as a means of ingress to and egress from property outside the subdivision that is not restricted to the same extent as the property within the subdivision. See 14 American Jurisprudence, 635, Section 255 and supplement thereto, 25 A.L.R.2d 904, 175 A.L.R. 1191, 1207, 39 A.L.R. 1083. However, we have found no cases involving a situation such as presented by the instant case where the property outside the subdivision will be restricted by its owners to the same extent as that within the subdivision. Hence, our conclusion is that the owners of a lot in a subdivision, which lot is restricted to use "for residence purposes only," may use such lot as a means of ingress to and egress from adjoining land that they own outside the subdivision if the [sic] impose upon such outside land the same restrictions that are applicable to lots within the subdivision.

159 N.E.2d at 429.

The Defendant in the instant case has not subjected the property adjoining Lot 26 to the same restrictions that apply within White Oak Subdivision. Indeed, even if the Defendant were willing to do so, he does not have the power to subject the adjoining property to such restrictions, since he does not own the adjoining property, but only has a revocable beneficial interest in it. Therefore, the Chancery Court's injunction is merely an enforcement of the restrictive covenants which bind the White Oak Subdivision.

The Defendant also argues that, even if the Plaintiffs are entitled to some type of injunctive relief, the Chancellor's injunction order is too broad and imposes an undue burden upon the Defendant. The Defendant insists that the wording of the injunction order does not even allow him to cross the property line between the adjoining restricted and unrestricted properties in order to mow the grass. We think that the thrust of the injunction is plain enough,

namely, to prohibit the regular traversing of Lot 26 for the purpose of entering or exiting the unrestricted property by way of White Oak Subdivision. To that end, the injunction is upheld. °However, incidental crossing of the property line, as when performing property maintenance and the like, is not prohibited.

■ The remaining issue on appeal, presented by the Plaintiffs, is whether the Trial Court erred in refusing to grant their post-trial motion to amend the judgment below so as to enjoin the Defendant from continuing to receive utility service on unrestricted property outside the subdivision by way of utility hook-ups from within the restricted subdivision and across Lot 26.

The Plaintiffs concede that the relief sought by their post-trial motion was not part of their original pleadings. Nevertheless, the Plaintiffs insist that the issue was fully litigated at trial and that an injunction against the utilities would have been consistent with the injunction already issued by the Chancellor. The Plaintiffs contend, therefore, that under Rule 15.02 of the Tennessee Rules of Civil Procedure, their motion to amend the judgment should have been granted.[1]

Rule 15.02 evidences a liberal policy in this State concerning amendments to pleadings so as to allow them to conform to the evidence presented at trial. *Derryberry v. Ledford*, 506 S.W.2d 152 (Tenn.App.1973). However, "the trial Court's discretion in allowing amendments at any stage of the proceedings should not be disturbed on appeal unless it plainly appears that such discretion was abused." *Id.; see also Wilson v. Ricciardi*, 778 S.W.2d 450 (Tenn. App.1989).

The Plaintiffs insist that the issue regarding utility service was fully litigated at trial, without objection by the Defendant, and that the Trial Court should therefore have been willing to rule on the matter as though it had been part of the pleadings. However, the Defendant directs our attention to a point in the trial proceedings where the Trial Court prevented him from introducing evidence on the matter of utility service:

CROSS EXAMINATION

BY MR. DURHAM [Defense counsel]:

Q. The power easement comes directly ...

A. Yes, it does.

Q. The power easement belongs to the power company, does it not?

A. It ... not necessarily belongs to the power company, they have a right to use that section of the property.

Q. The power company does ...

A. They're right on it.

Q. When you call the power company and ask for utilities do they put it where they want it or do they ask you where it goes?

THE COURT: It's immaterial to this issue.

MR. DURHAM: Well, I think the whole issue is immaterial, if anything, because it's obvious there's an easement all the way down through there ...

MR. RIPLEY [Plaintiffs' counsel]: Your Honor ...

THE COURT: For the use and benefit of ...

MR. DURHAM: If it goes all the way to the back I don't ...

THE COURT: Anyway, that's an extraneous matter.[2]

Thus, the Defendant contends, convincingly, that he did not attempt to introduce further proof on the subject matter of utility service because it appeared to him, from the above-quoted exchange between the Court and defense counsel, that the Court did not believe it was trying an issue of the utilities.

---

**1.** Rule 15.02 provides, in part:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

**2.** Although the word "extemporaneous" is shown in the transcript, we are satisfied the Chancellor said "extraneous."

We are not convinced that the utilities issue was fully litigated at trial. Therefore, we are certainly not persuaded that the Trial Court abused its discretion in refusing to amend or alter its judgment according to the Plaintiffs' motion.

Finally as to this point, we note that counsel for the Plaintiffs never moved to amend his pleadings relative to the utilities, even after the Court made it clear he would not consider the matter because it was not pleaded and, in fact, seemed to acquiesce in the Chancellor's ruling, as shown by the following colloquy occurring at the conclusion of the trial:

> MR. RIPLEY: Thank you, Your Honor. My clients have asked me to inquire about the existing utility use across the lot?
>
> THE COURT: Well, no such relief was sought.
>
> MR. RIPLEY: Very well, Your Honor. Thank you.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for such further proceedings, if any, as may be necessary and for collection of costs below. Costs of appeal are adjudged one-half to the Defendant and his surety and one-half to the Plaintiffs and their surety.

FRANKS, J., and WILLIAM H. INMAN, Special Judge, concur.