# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

EDWIN HAROLD BURNETT and wife,  )
CAROL HOFFMAN BURNETT,  )
  )
    Plaintiffs/ Appellees,  )    Rutherford Chancery No. 96CV-113
  )
**v.**  )
  )    Appeal No. 01A01-9610-CH-00452
**CHARLES HAMBY,**  )
  )
    Defendant/Appellant,  )
  )

## APPEAL FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
## AT MURFREESBORO, TENNESSEE

### THE HONORABLE ROBERT E. CORLEW III, CHANCELLOR

For the Plaintiffs/Appellees:      For the Defendant/Appellant:

Darrell L. Scarlett      Larry K. Tolbert
Murfreesboro, Tennessee      Murfreesboro, Tennessee

      C. Tracey Parks
      Gallatin, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This case involves a restrictive covenant in a subdivision. The Appellant sought to construct a "driveway" across a residential subdivision lot to provide ingress and egress to property located outside the subdivision. The trial court found that the proposed driveway would violate a restrictive covenant forbidding the use of any subdivision lot for any purpose not residential, and permanently enjoined construction of the driveway. We affirm.

El Rancho Estates is a residential subdivision in Rutherford County, Tennessee. Sanford Drive is the only road through the subdivision and connects on one end of the subdivision to Compton Road and on the other end to Betty Ford Road. The subdivision contains twenty-three lots, three of which have not had houses built on them. The lots range in size from two-acre lots to one containing six or seven acres. Appellees Edwin and Carol Burnett ("the Burnetts") own Lot 12.

Appellant Charles Hamby ("Hamby") owns approximately one hundred acres of land adjacent to El Rancho Estates. He has a home on this land and uses part of it for agricultural purposes. Hamby's home is accessed by Lakebrook Drive, a public road which passes through the Lakebrook subdivision. In years prior to the instant litigation, Hamby had his land surveyed to determine its potential as a residential development. He also spoke to residents of El Rancho Estates in attempts to gain access across their lots to his property, explaining that he wanted a more aesthetic route to his house. His efforts were unsuccessful. Hamby finally purchased Lot 13, the lot adjacent to the Burnetts' home. He then contracted to sell the lot, reserving a fifty-foot-wide easement from Sanford Drive to his property. The easement takes up .65 acres of Lot 13. This easement is located next to the Burnetts' property. Hamby indicated that he planned to use the easement for a "driveway" to his home.

El Rancho Estates is subject to several restrictive covenants. The relevant restrictive covenants state, in pertinent part:

> 1.　　No lot shall be used except for residential purposes.
> * * *
> 3.　　No objectionable nor offensive trade or business of any kind shall be carried on upon any lot, nor shall anything be done thereon which may be or become a nuisance or annoyance to the neighborhood.
> * * *
> 5.　　No lot shall be resubdivided into smaller lots and not more than one residence may be erected or maintained on any lot.
> * * *
> 8.　　A perpetual easement or right-of-way for underground installation and maintenance of telephone lines, electric lines or cables, under the rear five (5) feet of each lot and the side five (5) feet of each lot is reserved in the grantor on all lots.

9.      These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change the said covenants in whole or in part.

These restrictive covenants were in effect when Hamby purchased Lot 13.

The Burnetts filed suit in Chancery Court, alleging that the proposed "driveway" would violate the applicable restrictive covenants and would constitute a nuisance. They obtained a temporary restraining order prohibiting Hamby from constructing a "roadway" across Lot 13. A hearing was later held to determine if the injunction should be made permanent.

At the hearing, several residents testified that the proposed "driveway" would constitute a nuisance and violate the restrictive covenants. Many testified that they feared Hamby would develop his land as a residential subdivision and use the "driveway" as a road to the new subdivision. Several witnesses testified to past conversations with Hamby in which he discussed his plans to develop his property.

In addition, the Burnetts introduced into evidence recently adopted amendments to the restrictive covenants, signed by a majority of the residents. One of these amendments provided, "No lot shall be utilized to provide access to any property not located in El Rancho Estates Subdivision and subject to the Restrictive Covenants contained in Deed Book 161, page 361 of the Register's Office of Rutherford County, Tennessee or this additional restriction." The Burnetts' counsel informed the trial court that the amendments would be recorded the day following the hearing.

Hamby testified that he had no plans to develop his land or use the easement to build a road for any use other than a personal driveway. He admitted that he had told some people that, as "a worst case scenario," he might eventually have to develop his land into a residential subdivision of single-residence, five-acre lots. Hamby stated that "[t]here [would] never be a public road put there." He was then asked:

Q:      Are you willing then to have this Court order that you may never use this road or right-of-way for anything other than access just to your house?

A:      I'll not do that.

Q:      Okay. You don't want to limit it to not being able to use by others when you might sell lots off, do you?

A:      Well, never is a long time.

2

Q:   But you don't want to make that limitation, do you?

A:   No, sir.

Hamby admitted that the county required a width of fifty feet for a public road, precisely the width of his easement, but insisted that he did not plan to build such a road. He testified that he did not necessarily intend to use the entire fifty feet for a roadway, that he intended to construct a drive with just enough room for two cars to pass each other. He stated that a fifty-foot easement would allow him enough room to deviate the driveway's course around trees and to slope the drive in such a way as to minimize any run-off problems from rainfall.

After hearing, the trial court issued an order converting the temporary restraining order into a permanent injunction. The order enjoined Hamby "from constructing a roadway over and across Lot 13 of El Rancho Estates Subdivision." The trial court also ruled that the amendments to the restrictive covenants would "only take effect at the expiration of the ten (10) year renewal periods, with the next renewal period being July 2, 2000." The trial court issued an Opinion, in which it explained the basis for the ruling on the injunctive relief:

> A literal interpretation of the covenants indicate to the Court that the setting aside of a fifty foot easement across the Defendant's [Hamby's] lot and constructing a roadway thereon is contrary to the restrictive covenants. The provisions of paragraph one of the restrictive covenants appear to be very restrictive. While a number of activities may be encompassed by the term "residential purposes" and while this term may not be extremely well defined, it is apparent to the Court that utilization of the lot as a roadway for ingress and egress to land outside of the subdivision is not embraced within the term "residential purposes." . . .

> * * *

> It is impossible, of course, for the framers of restrictive covenants to state with specificity every possible scenario which may subsequently arise. Nonetheless, it appears to the Court in the present cause that the restrictive covenants are significantly specific in their requirement that the lots in question in this subdivision should be used only in the traditional manner in which residential subdivision lots are used. These restrictions, then, appear to preclude the use of a residential lot, or portion thereof, for purposes of an easement, roadway, or access way to other property not bound by the restrictions, separate and apart from the residence located on that lot.
> Thus it appears to the Court that the terms of the restrictive covenants are sufficiently specific to prevent the construction of the roadway planned by the Defendant.

The trial court also found that the roadway could become an annoyance to the other residents of the subdivision. It determined that the eighth restrictive covenant, while not expressly forbidding other easements, made it "apparent certainly that no easement for further streets or areas of ingress and egress are contemplated within the restrictive covenants." In addition, the trial court found that the

3

easement, while not a technical resubdivision of Lot 13, would violate the spirit of the fifth restrictive covenant, which it found indicated "that each lot should be used together with the remaining portions of that lot, and for a common purpose with the balance of the lot."

As to the recent amendment to the restrictive covenants, the trial court held that the proper interpretation of the ninth restrictive covenant was that, after the initial twenty-five years from the date of their filing, the covenants could only be modified at the end of each successive ten-year period. This meant that the recent amendments recorded by the Burnetts would not become effective until July 2, 2000, and then only if the same landowners still owned the lots, or if a new majority of landowners signed the amendments.

Hamby now appeals to this Court, arguing that the proposed "driveway" would constitute a "residential purpose," would not be a nuisance or annoyance, would not be a resubdivision of the lot, and would not violate the utilities easement. The Burnetts appeal the court's ruling that the recent amendments to the restrictive covenants will not take effect until July 2, 2000.

Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d); *see also Beacon Hills Homeowners Ass'n v. Palmer Properties, Inc.*, 911 S.W.2d 736, 737 (Tenn. App. 1995).

Restrictive covenants are valid in Tennessee but, as limitations on the unrestricted enjoyment of land, they are not favored. *Waller v. Thomas*, 545 S.W.2d 745, 747 (Tenn. App. 1976). Restrictive covenants should be strictly construed, with any ambiguities resolved against the restriction. *Id.* Restrictive covenants "are to be interpreted as any other writing, *i.e.*, in construing documents words must be given their ordinary and customary meaning and not a strained or unnatural interpretation." *Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. App. 1995). Finally, "once the intention of the parties is ascertained, the covenant will be enforced, provided it serves a legitimate purpose and does not constitute a nuisance per se." *Waller*, 545 S.W.2d at 747.

Several Tennessee decisions are instructive on the issue of whether the proposed "driveway" would violate the first restrictive covenant, which states that "[n]o lot shall be used except for

4

residential purposes." The first is ***Laughlin v. Wagner***, 146 Tenn. 647 (1922). In ***Laughlin***, a restrictive covenant limited the use of the lots on one street, Belvedere Street, to residential purposes. *Id.* at 649-50. Belvedere intersected with Madison Avenue, which was not subject to the Belvedere restrictive covenant. At the corner of Belvedere and Madison, Lot 34 fronted fifty feet on Belvedere and fifty feet on Madison, forming an "L," with another lot containing a drug store situated between the legs of the "L." A mercantile store was on one leg of the "L," fronting onto Madison, and the other leg, fronting onto Belvedere, was undeveloped, except for a small metal garage. The owner of the lot planned to extend the drug store six feet onto the Belvedere side of the lot and pave the remainder of the Belvedere side, presumably as an entrance to both the mercantile building and the drug store. *Id.* at 649-52. The trial court had issued an injunction prohibiting the implementation of this plan. *Id.* at 652-53.

The Tennessee Supreme Court found that the Belvedere side of the lot, except for a portion extending from Madison to "a point opposite the extension of the west [back] boundary line of that portion of the lot which fronts on Madison avenue," was subject to the restrictive covenant. ***See id.*** at 656. The Court ruled that the restrictive covenant prevented the Belvedere side of the lot from being used for any purpose incident to a commercial use, including the construction of a driveway into an adjacent commercial lot outside the subdivision. *Id.* at 657-59. The Court permitted the lot to be used for purposes other than the construction of a residence, so long as the use was incident to a residential purpose: "[I]f there be no building at all, [the lot] could be used for purposes consistent with and incident to its use for residential purposes." *Id.* at 658. The Court concluded:

> From this interpretation it follows that the Belvedere side of this lot could not be made use of in such a way as that the manifest purpose would be to serve the business houses adjacent to it. For example, it could not be used as affording an intentional passageway or entrance into the business house. Any structure, whether strictly a house or not, such as a concrete driveway, which devotes the use of the property to the carrying on of a business, would be violative of this clause, but the use of the lot for decorative purposes, such as flower beds or as a walkway on the lot itself, would not violate the manifest intent and purpose of this clause.
>
> In other words, any use of this lot which might be reasonably incident to its use for residential purposes is permissible, but it is not permissible to put the lot into service as an incident to the business houses on the adjacent portion of the lot.

*Id.* at 658-59.

5

Hamby argues that his proposed driveway is incident to a residential purpose, that it is merely intended to be a driveway or access road allowing him ingress to and egress from his home. This issue is addressed in *Lapray v. Smith*, 804 S.W.2d 87 (Tenn. App. 1990). In *Lapray*, the defendant owned a lot in a subdivision which had restrictive covenants forbidding use of the lots for anything other than single-family homes. The restrictive covenants expressly forbade their use for mobile homes. *Id.* at 88-89. The defendant's parents owned land adjacent to the subdivision. They allowed the defendant to set up a mobile home on this land. The defendant then created an opening in the curb around *his* lot in the subdivision and used it to gain access to his residence, the mobile home. *Id.* He argued that, under *Laughlin*, he was using the lot in conformity with the restrictive covenants because he was using it as a driveway and front yard to a single-family residence, the mobile home. *Id.* at 89.

The Court in *Lapray* disagreed, stating that "*Laughlin* does not support the Defendant's implied argument that residential use of unrestricted property is the only important concern in determining whether such unrestricted property may be used in conjunction with adjoining restricted property." *Id.* The Court found that the defendant's mobile home did not conform with the restrictive covenants and that, consequently, use of the subdivision's lot as a driveway to that "residence" also violated the covenants:

> Just as the *Laughlin* Court did not allow restricted property to be used in conjunction with adjoining unrestricted and non-conforming property, so the present Defendant must not be permitted to subvert the plain restrictions of the White Oak Covenant by using Lot 26 merely as a 'front yard' to unrestricted and non-conforming adjoining property.

*Id.* at 90. Therefore, even if a restricted lot is used to benefit an adjoining residence, that use still may be disallowed if the adjoining residence does not otherwise conform with all the restrictions placed on the restricted lot.

Hamby argues that *Lapray* is distinguishable in that the defendant in that case did not have the ability to make the adjoining property conform, because he was not the owner. Hamby notes that he has the ability to conform to the restrictive covenants. Hamby points to the following language in *Lapray*: "Perhaps, if the Defendant had both the authority and the willingness to restrict the property outside the subdivision to the same extent as Lot 26 is restricted, a different question would be presented." *Lapray*, 804 S.W.2d at 90. After discussing an Ohio case which held that a restricted lot could be used to reach adjoining land if that adjoining land were subject to the same restrictions,

6

*Lapray* notes:

> The Defendant in the instant case has not subjected the property adjoining Lot 26 to the same restrictions that apply within White Oak Subdivision. Indeed, even if the Defendant were willing to do so, he does not have the power to subject the adjoining property to such restrictions, since he does not own the adjoining property, but only has a revocable beneficial interest in it.

*Id.* Hamby contends that, because he is able and willing to restrict his property to development as a residential neighborhood, he should be able to build his driveway.

The Burnetts observe that the statements relied on by Hamby in *Lapray* are dicta. It is also noteworthy that Hamby has not yet placed his property under the same restrictive covenants as El Rancho Estates.

Another instructive case is unpublished, ***Proffitt v. Sullivan***, C.A. No. 27, 1986 WL 2642 (Tenn. App. Feb. 28, 1986). In ***Proffitt***, this Court upheld an injunction against building a road across two lots in a subdivision which restricted the use of its lots to residential uses, even though the road would merely serve to join two subdivisions. The Court reasoned that using lots as a connecting street could not be considered a residential use, and that such a street would destroy the privacy and security of the restricted subdivision. ***Proffitt***, 1986 WL 2642, at *1-2. This reasoning is persuasive.

Hamby asserts that he does not plan to build an access road or connecting street, just a driveway. However, several witnesses testified that Hamby had told them he might build a subdivision on his tract of land. Hamby admitted that he had said that he might do so as "a worst case scenario." Coincidentally, the easement on lot 13 is fifty feet wide, the width required by the county for public roads. Although Hamby testified that his "driveway" would never be a public road, he refused to agree to let the court fashion an order prohibiting the use of the easement for such a purpose. From this evidence, the trial court could reasonably conclude that Hamby has not foreclosed the possibility of turning his "driveway" into an access road for a future subdivision on his property. While the trial court did not make an express finding to this effect, it consistently referred to the drive as a "roadway." This implies that the trial court may not have found credible Hamby's testimony that he would never use the "driveway" as a public road. The trial court is in a better position to judge the credibility of witnesses, and thus its findings involving questions of credibility receive great deference on appeal. ***Randolph v. Randolph***, 937 S.W.2d 815, 819 (Tenn. 1996).

7

In addition, while Hamby's property is adjacent to Lot 13, his residence is not. His easement would connect Sanford Drive to a road through his property, the road which leads to Hamby's home. Therefore, Hamby's proposed use of the easement is much closer to that of an access road than a driveway, even if Hamby never develops his property as a residential subdivision.

In addition, the trial court found that the restrictive covenants precluded use of any lot "for purposes of an easement, roadway, or access way to other property not bound by the restrictions, separate and apart from the residence located on that lot." This is in accord with *Lapray* and supports the conclusion that even a personal driveway would violate the restrictive covenants. As noted earlier, Hamby has not bound his property to the same restrictive covenants governing El Rancho Estates.

In sum, we conclude that the trial court correctly found that Hamby's proposed use of the easement would not be for a residential purpose and would therefore violate the restrictive covenant. The decision of the trial court is affirmed on that basis. Therefore, the other issues raised by Hamby on appeal are pretermitted.

The Burnetts argue on appeal that the trial court erred in ruling that their recently recorded amendments to the restrictive covenants cannot become effective until the year 2000. The language of the ninth restrictive covenant is straightforward. The trial court interpreted it according to its "ordinary and customary meaning." The holding of the trial court on this issue is affirmed. *See Aldridge v. Morgan*, 912 S.W.2d 151, 153 (Tenn. App. 1995).

The decision of the trial court is affirmed. Costs are assessed against Appellant, for which execution may issue if necessary.

_____

_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**

8