# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

| | |
|---|---|
| **ROBERT EDWARD STEWART,** | ) |
| | ) |
| | ) |
| Plaintiff/Appellee, | ) Madison Chancery No. 43069 |
| | ) |
| VS. | ) Appeal No. W1999-02185-COA-R3-CV |
| | ) |
| **LYNDA ELAINE STEWART,** | ) |
| | ) |
| | ) |
| Defendant/Appellant. | ) |

**FILED**

January 10, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
### AT JACKSON, TENNESSEE
### THE HONORABLE JOE C. MORRIS, CHANCELLOR

**BOB C. HOOPER**
Jackson, Tennessee
Attorney for Appellant

**NANCY S. NELSON**
Jackson, Tennessee
Attorney for Appellee

**REVERSED AND REMANDED**

ALAN E. HIGHERS, J.

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Lynda Elaine Stewart appeals from the dismissal of her petition seeking a contempt citation against Robert Edward Stewart. For the reasons stated herein, we reverse the trial court dismissal and remand the case to the Chancery Court of Madison County.

## I. Facts and Procedural History

This case began in January of 1990 when Robert Stewart ("Appellee") filed a complaint for divorce in the Chancery Court of Madison County. Lynda Stewart[1] ("Appellant") filed an answer and counterclaim seeking an absolute divorce on the grounds of irreconcilable differences and inappropriate marital conduct. Prior to any substantive divorce proceedings, the chancellor entered an order which required Mr. Stewart to pay Ms. Stewart four hundred dollars ($400.00) per month in temporary alimony. This order was to be effective until the final outcome of the case or until further court order.

The Stewart's divorce case came to be heard in October of 1990. There are no records from that proceeding, but the chancellor's ruling was embodied in a November 7, 1990 letter he wrote to the parties' respective attorneys. In that letter, the chancellor awarded Ms. Stewart an absolute divorce and specified how the assets of the marriage were to be divided. Pertinent to the present appeal, Ms. Stewart was awarded one-half (½) of Mr. Stewart's Tennessee Consolidated Retirement Account. She was also awarded alimony in the amount of three hundred dollars ($300.00) per month. The chancellor's letter instructed the attorneys to draw up the appropriate order. No such order was ever entered.

On February 23, 1998, Ms. Stewart filed a petition for contempt ("first petition for contempt") against Mr. Stewart for failure to pay alimony. In that petition, Ms. Stewart asserted that the order for temporary relief entered in February of 1990 was still in effect because there had never been a final decree.[2] Mr. Stewart responded by denying that Ms.

_____

[1] In their briefs, the parties also refer to Ms. Stewart by her maiden name, Ms. Dees. For the sake of simplicity, we will refer to her as "appellant" or "Ms. Stewart."

[2] Ms. Stewart contended that the parties were still married due to the fact no final order was ever entered.

Stewart was entitled to alimony. He also denied that the parties were still married. He relied on the November 7, 1990 letter from the chancellor, as well as the chancellor's oral ruling at the October 1990 hearing.[3]

A hearing was held upon the petition for contempt on April 24, 1998. At the hearing, there was extensive testimony regarding the existence, or lack thereof, of a divorce. There was also testimony regarding the question of alimony. Mr. Stewart's retirement fund was also mentioned several times during the hearing.

On May 11, 1998, the court entered an order which set the alimony arrearage at $1,900.00.[4] The court entered the final decree of divorce on August 10, 1998, *nunc pro tunc* to October 15, 1990. The final decree contained similar if not the exact provisions of the chancellor's ruling in 1990. Most importantly, the decree stipulates that Ms. Stewart was to receive one-half (½) of Mr. Stewart's retirement account.

On September 11, 1998, Ms. Stewart filed a petition for contempt ("second petition for contempt") alleging that Mr. Stewart had failed to pay one-half of the retirement benefits as ordered in the final divorce decree. Mr. Stewart answered the complaint and asserted *res judicata* as a defense. He argued that the order of May 11, 1998 was an adjudication of all issues between the parties, including any questions relating to the retirement account. The chancery court held a hearing regarding the second petition for contempt on November 13, 1998. The court dismissed the second petition finding that the matter was *res judicata* by the order of May 11, 1998.

This appeal followed. The sole issue before this court is whether the contempt petition relating to Mr. Stewart's retirement account was barred by the principles of *res*

---

[3] Mr. Stewart argued that the chancellor had announced from the bench that the parties were divorced. Although we have no reason to doubt Mr. Stewart's assertion, we are unable to say whether he is correct since we do not have a record of the October 1990 proceedings.

[4] The court calculated the total alimony as: the $700 which Mr. Stewart owed as of April 1991 plus $300 per month that Mr. Stewart failed to pay up until September of 1991. The court found that Ms. Stewart began living with another man in September of 1991. According to the court, this constituted a material change in circumstances which cut off her right to alimony as of that date.

*judicata.*

## II. Law and Analysis

Res judicata bars a second suit between the same parties on the same cause of action as to all issues which were or could have been litigated in the former suit. <u>Scales v. Scales</u>, 564 S.W.2d 667 (Tenn. Ct. App. 1977). The party asserting the defense must demonstrate: (1) that the underlying judgment was rendered by a court of competent jurisdiction; (2) that the same parties were involved in both suits; (3) that the same cause of action was involved in both suits; and (4) that the underlying judgment was on the merits. <u>Lee v. Hall</u>, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990). The Tennessee Supreme Court described the doctrine of *res judicata* and its counterpart, collateral estoppel, as follows:

> The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.[5]

<u>Goeke v. Woods</u>, 777 S.W.2d 347, 349 (Tenn. 1989) (quoting from <u>Massengill v. Scott</u>, 738 S.W.2d 629, 631 (Tenn. 1987)).

Neither party takes issue with the parameters of the doctrine of *res judicata*. The question before this court is whether the doctrine is applicable in the present case. A review of the record shows that the first petition for contempt, by its language, dealt only with the issue of alimony. The petition does not mention Mr. Stewart's retirement account. However, Mr. Stewart argues that Rule 15.02 of the Tennessee Rules of Civil Procedure is dispositive of this case. That rule states: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn.R.Civ.P. 15.02. Mr. Stewart asserts that

---

[5] We believe that the second petition for contempt presents a different cause of action than that heard by the chancellor in April of 1998. Specifically, the April 1998 hearing focused on whether the parties were divorced, and if so, whether alimony was owed. The second contempt petition was concerned with an issue of property division, namely the retirement account. Since it was a different cause of action, this case would be more properly evaluated under the doctrine of collateral estoppel. Collateral estoppel means that the parties and their privies in any <u>other cause of action</u> cannot relitigate any matter which was actually determined in the prior suit. <u>Dickerson v. Godfrey</u>, 825 S.W.2d 692 (Tenn. 1992); <u>Cantrell v. Burnett & Henderson Co.</u>, 187 Tenn. 552, 216 S.W.2d 307 (1948)(emphasis added). However, we will use the term *res judicata*, as the parties did in their briefs, because we do not think the terms we use will change the issue in this case.

4

Ms. Stewart impliedly consented to litigate issues relating to the retirement account. Specifically, Mr. Stewart points to several exchanges between Ms. Stewart's attorney and witnesses which involved questions about the retirement account.

There is no doubt that references were made to the retirement account at the April 1998 hearing. In dismissing the second petition for contempt, the chancellor obviously determined that this issue had been litigated at that hearing such that subsequent litigation of the issue was barred by *res judicata*. The trial judge's determination with respect to the issue of implied consent must be upheld unless there has been an abuse of discretion. See Zack Cheek Builders, Inc. v. McLeod, 597 S.W.2d 888, 891 (Tenn. 1980); Lapray v. Smith, 804 S.W.2d 87, 91 (Tenn. Ct. App. 1990).

Based on our review, the record fails to indicate that the issues relating to the retirement account have been fully adjudicated. The May 11, 1998 order, which appellee claims resolved all issues between the parties, did not mention the retirement account.[6] The appellee argues that there was no reason to mention the retirement account in the May 11 order because all evidence at the April 1998 hearing showed that Ms. Stewart could not receive any money from the account. We refuse to make such a blind inference. By its very language, that order dealt solely with the question of alimony. However, the final decree of divorce, rendered in August of 1998, stipulated that Ms. Stewart was to receive one-half (½) of the retirement account.[7]

We are left with the final divorce decree as the only pronouncement of the trial court as to the retirement account. According to that decree, Ms. Stewart is entitled to one-half of the account. We find nothing in the transcript from the April 1998 hearing which would cause us to believe the chancellor had determined otherwise. The May 11, 1998 order

---

[6] The appellee claims that the May 11, 1998 order controls the financial relationship between the parties because, technically, it was later in time. The final divorce decree was not entered until August of 1998, but it was *nunc pro tunc* to October of 1990.

[7] We find this especially important in light of the fact the appellee argues that the evidence at the hearing showed Ms. Stewart could not get anything from the retirement account. Even if we were to say that the issue regarding the retirement account had been resolved at the April 1998 hearing, the final decree would lead us to believe that the issue had been decided in favor of Ms. Stewart.

cannot, through its silence on the issue, be read to take away Ms. Stewart's interest in the retirement account.

Finally, the purposes which underlie preclusion doctrines such as *res judicata* and collateral estoppel lead us to believe that the present case is not a proper one for the application of those doctrines. As appellee points out in his brief, the doctrine of *res judicata* exists to promote finality in litigation. The case at bar presents a distinct absence of finality in that the issues relating to the retirement account have not been resolved. The mere fact that evidence was presented regarding the retirement account at the April 1998 hearing does not necessarily mean that the question was resolved.[8] In fact, based on our reading of the record, we consider the question to be very much open. The final divorce decree grants Ms. Stewart one-half (½) of the retirement account and there is nothing in the record that changes that award. The question of whether Ms. Stewart can, in fact, receive money from that account is not before this court. However, if she can, under the law, receive money from that account, then she should be allowed to bring a proper enforcement proceeding as she attempted to do. Even if she is not entitled to receive money from the account, *res judicata* is not the proper manner for that denial. As such, we find that the doctrine of *res judicata* was not applicable in the present case and the second contempt petition should not have been dismissed on that basis*.*

---

[8] In fact, a reading of the record indicates that some of the references to the retirement account were directed at Mr. Stewart's ability to pay alimony. In that regard, those references cannot be used to support the argument that the issues surrounding the retirement account were tried by implied consent.

6

### III. Conclusion

For the foregoing reasons, we reverse the decision of the trial court that dismissed appellant's petition for contempt as *res judicata*. We remand the case to the Chancery Court of Madison County for resolution of the issues surrounding Mr. Stewart's retirement account. We express no opinion as to the outcome of the case on remand. Costs of this appeal are taxed to the appellee, Robert Edward Stewart, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
LILLARD, J.