**BEACON HILLS HOMEOWNERS ASSOCIATION, INC., et al, Plaintiffs/Appellees,**

v.

**PALMER PROPERTIES, INC., Defendant/Appellant.**

Court of Appeals of Tennessee, Eastern Section.

July 20, 1995.

Permission to Appeal Denied by Supreme Court, Nov. 27, 1995.

Richard C. Jessee, Morristown, for Appellant.

C. Dwaine Evans, Morristown, for Appellees.

## OPINION

McMURRAY, Judge.

This action was instituted in the Chancery Court for Hamblen County for the purpose of enforcing restrictive covenants applying to Beacon Hills Subdivision. The appellees alleged that the appellant was attempting to place a structure on a lot which did not conform to the requirements of the restrictive covenants. The trial court found the appellant to be in violation of the covenants and permanently enjoined the appellant from erecting the structure as proposed. This appeal resulted.

The appellant presents the following issue for our review:

1. Did the trial court err in holding that the defendant's [appellant's] manufactured home was a "trailer" within the meaning of the Plaintiffs' [appellees'] restrictive covenants.

■ We undertake our review of this case pursuant to the dictates of Rule 13(d), Tennessee Rules of Appellate Procedure, *i.e.*, this Court reviews the trial court record (*de novo*) with the presumption that the trial court's findings of fact are correct, unless the evidence preponderates otherwise. Absent an error of law affecting the result, or unless the evidence preponderates against the trial court's factual determinations, we will affirm the trial court's decision. *Campanali v. Campanali*, 695 S.W.2d 193 (Tenn.App.1985).

■ The restrictive covenant on the Beacon Hills Subdivision which is pertinent to this case provides as follows:

9. TEMPORARY STRUCTURES: No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently.

It was stipulated by the parties in the trial court that the structure in question was a "manufactured home." A manufactured home has been statutorily defined. " 'Manufactured home' means a structure, transportable in one (1) or more sections which, in the traveling mode is eight (8) body feet or more in width, or forty (40) body feet or more in length, or, when erected on site, is three hundred twenty (320) or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein; except that 'manufactured home' includes any structure which meets the requirements of this subdivision except the size requirements and with respect to which the manufacturer voluntarily files a certificate required by the secretary and complies with standards established under this title." T.C.A. § 68–126–202(4).

A "mobile home or house trailer" is defined in T.C.A. § 55–1–105 as follows:

(a) "Mobile home or house trailer" means any vehicle or conveyance, not self-propelled, designed for travel upon the public highways, and designed for use as a residence, office, apartment, storehouse, warehouse, or any other similar purpose.

The restrictive covenants that apply to Beacon Hills Subdivision were recorded in the Office of the Register for Hamblen County on October 21, 1977. At that time T.C.A. § 68–126–202(4) had not been enacted. T.C.A. § 55–1–105, however, predates the recordation of the restrictive covenants. Nevertheless, we are of the opinion that the structure proposed to be erected by the defendant falls within either definition. As the chancellor noted in his excellent memorandum opinion, "[a] great deal of difficulty in this case and others like it is that manufacturing methods and terminology have changed over the past twenty years, calling into question the applicability of restrictive covenants which prohibit 'trailers' or 'mobile homes' that were written before that time." The trial court found the structure to be a trailer as that term is used in the restrictive covenants. In so doing he relied upon *Albert v. Orwige*, 731 S.W.2d 63 (Tenn.App.1987).

In *Albert*, by stipulation of the parties, it was agreed that plaintiffs and defendants owned property in a subdivision called "Riverview Subdivision" and that the subdivision

was subject to restrictive covenants prohibiting the use of trailers or mobile homes on the premises. Defendants purchased a 1985 model Spring Hill "structure" from Don Bryant Mobile Homes. The structure was built by Fleetwood Enterprises. At the time of the purchase defendants were aware that the property was restricted insofar as mobile homes were concerned. They discussed these restrictions with the owner of the sales lot, who advised them that the structure was not a mobile home, but rather was a manufactured or factory-built home.

The *Albert* court made the following observations:

> The structure consisted of two units, each fifty-two feet long and approximately thirteen feet wide. Each unit was pulled by a tractor-truck over the public highways to defendants' lot in Riverview Subdivision. Concrete footers were poured at the site for the foundation. Anchors were imbedded in the footers on which were built pillars of concrete blocks. The two units were bolted together and secured to the anchors by means of metal straps. The assembled structure was constructed on four I-beams running the length of the units. The space between the foundation or footing and the structure was subsequently enclosed on three sides by an additional concrete block foundation.
>
> Following installation, the wheels, axles and tongues were removed from each of the units and returned to the manufacturer. These could be reattached to the units, which could then be separated and towed away from defendants' lot by a shortbed tractor-truck in the same manner in which they had been brought to defendants' property. A certificate of title had been issued for the structure and each unit of the structure had been given a vehicle identification number.

In this case, we are unable to distinguish the description of the structure in *Albert* from the structure in this case. The structure here consisted of two units. Each unit was pulled by a tractor-truck over the public highways to defendants' lot in Beacon Hills Subdivision. Concrete footers were poured or proposed to be poured at the site for the foundation. The two units were to be attached together and secured to the foundation. The assembled structure was constructed on four I-beams running the length of the units. The space between the foundation or footing and the structure was to be enclosed. The only difference between the case under consideration and *Albert* is that, here, the appellant proposed to add a garage, porch and use brick on a large portion of the exterior of the structure.

Following installation, the wheels, axles and tongues were to be removed from each of the units. As in *Albert*, the wheels, axles and tongues could be reattached to the units, which could then be separated and towed away from defendants' lot in the same manner as they had been brought to defendants' property. A certificate of origin for a vehicle was issued by the manufacturer and a vehicle identification number was assigned to it. Further, the structure under consideration here was to have a detached electrical meter such as that used in mobile home installations.

In *Albert*, the court held that:

> Defendants' dwelling is no less a trailer or mobile home merely because the wheels were removed after installation. It is obviously a "double-wide" mobile home, erected on concrete blocks and capable of movement upon re-attachment of the wheels and removal of the concrete blocks.
>
> In support of their contention that the structure is a "modular home" rather than a "mobile home," defendants rely heavily on the manner in which their structure was constructed, when compared to a conventional mobile home. It was pointed out that defendants' structure was made with wooden studs and roof trusses, an asphalt shingle roof, and a plywood subfloor with exterior masonite siding. . . .

The court noted that the manner of construction between a "modular home" and a "mobile home" was a difference without a distinction. We agree that the same reasoning can be applied to a "manufactured home" and a "mobile home."

■ Since, however, the restrictions in Beacon Hills Subdivision do not mention "mobile home" but prohibit "trailers," it is necessary for us to determine if "trailer" as used in the restrictive covenants was intended to apply to "mobile homes" or "manufac-

tured homes" as those terms are now used. While we are aware of the rule in this jurisdiction that restrictive covenants are not favored and must be strictly construed, we are of the opinion that the intent of the parties is controlling.

Such restrictive covenants, of course, will be enforced according to the clearly expressed intention of the parties; but being in derogation of the right of unrestricted use of property will be strictly construed, and will not be extended by implication to anything not clearly and expressly prohibited by their plain terms. (Citations omitted).

*Turnley v. Garfinkel,* 211 Tenn. 125, 362 S.W.2d 921 (1962). *See also* the dissent by Judge Crawford in *Albert v. Orwige,* supra.

Considerable evidence was adduced in this case to demonstrate that, when completed, the structure would be as attractive as a site constructed home and some of the existing homes in the subdivision. It appears from the evidence on the point that, if constructed in conformity with the plans of the appellant, the aesthetics of the neighborhood would not be adversely affected. This fact, however, is of no consequence in deciding the issue before the court.

It seems clear that it was the intent of the parties who prepared the restrictive covenants when using the term "trailer" were contemplating a "trailer used as a residence." As the trial court pointed out the use of the term "trailer" is no longer utilized for structures in which people live and even the term "mobile home" seems to be passé. We have examined a number of cases in this jurisdiction which use the term "trailer" and "mobile home" in referring to a residence and find that at the time of the filing of the restrictive covenants in this case, the terms "trailer" and "mobile home" were used interchangeably with "trailer" being the predominant term during that period. Indeed, we find the terms to be used by the courts interchangeably through 1994. *See e.g., Reece v. Lawson* (Tenn.App.1994), an unpublished opinion filed May 6, 1994, 1994 WL 171056.

Upon our examination of the record, we are unwilling to say that the evidence preponderates against the findings of the trial court. Likewise, we agree that *Albert v.*

*Orwige,* supra, is controlling law under the facts and circumstances of this case and was properly applied. To conclude otherwise would require us to reject the teachings of *Albert,* which this court refused to do in *Reese v. Edwards,* an unpublished opinion by Judge Nearne, opinion filed May 18, 1989, 1989 WL 51519. In *Reese v. Edwards,* the court noted that the Supreme Court had tacitly approved *Albert* in denying permission to appeal without comment.

As an intermediate appellate court, we adhere to the doctrine of *stare decisis* except in extreme cases and are obliged to leave a substantial change in existing law to the Supreme Court or the General Assembly. In so holding, we are constrained to state that and examination of the law either by the General Assembly or by the supreme court would be beneficial in future cases when dealing with terms whose meanings and usage have been subjected to an evolution as is the case here.

We affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant and this cause is remanded to the trial court for the collection thereof and for any other and further action made necessary by our disposition of this appeal.

GODDARD, P.J., and SUSANO, J., concur.