# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2011 Session

## LONNIE E. ROBERTS, ET AL. v. CLAUDE RUSSELL BRIDGES a/k/a LEON RUSSELL, ET UX.

### Direct Appeal from the Chancery Court for Maury County
### No. 08-654     Robert L. Jones, Judge

### No. M2010-01356-COA-R3-CV - Filed May 17, 2011

This appeal involves the enforcement of a restrictive covenant. A group of neighbors filed suit seeking permanently to enjoin a musician and his wife from using their property for non-residential purposes. The trial court ruled in favor of the neighbors after a bench trial, prohibiting the homeowners from parking a tour bus, two panel trucks, and several employee vehicles on their property and ordering the homeowners to remove a portion of a parking lot and driveway built to accommodate the vehicles. The court later awarded discretionary costs to the neighbors. We reverse the grant of injunctive relief requiring the homeowners to remove a portion of the parking lot and driveway but affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part & Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Kristin Fecteau and John A. Beam, III, Nashville, Tennessee, for the appellants, Claude Russell Bridges and Jan Bridges.

William S. Fleming and Jennifer F. Franks, Columbia, Tennessee, for the appellees, Lonnie E. Roberts, Renae B. Roberts, Judy Wood, John Wood, Barbara Herklotz, Robert Herklotz, Charles E. Coggins, Kathy Coggins, John Lewis and Tennessee Rural Health Improvement Association.

## OPINION

### I. Background and Procedural History

Claude Russell Bridges is a musician who performs under the stage name of "Leon Russell." Mr. Bridges, a sole proprietor, spends approximately fifty to sixty percent of his time touring and performing at music venues throughout the country. While on tour, Mr. Bridges travels and resides in a large tour bus. The tour bus, however, does not house the music equipment and merchandise Mr. Bridges uses on tour such as keyboards, monitors, microphones, compact discs, and t-shirts; Mr. Bridges owns two panel trucks that serve this purpose. One panel truck is towed behind the tour bus and stores all of Mr. Bridges's commercial merchandise and equipment, while a second panel truck serves as a backup vehicle and remains parked at his residence during periods of non-use.

In March 2007, the defendants/appellants ("Homeowners"), Mr. Bridges and his wife Jan Bridges, purchased Lot 18 of the Steelebrook Acres subdivision in Maury County, Tennessee subject to the following restrictive covenants:

> 3. All lots shall be for residential purposes only except that such restrictions shall not prevent farming operations except no swine will be allowed.
>
> . . . .
>
> 6. No home shall be built on any tract where any part of said home is less than 45 feet from the right-of-way of any dedicated street, nor shall any home be built on any tract where any part of said home is nearer than 25 feet to the side boundary line of said tract.

After purchasing the property, Homeowners constructed a large metal outbuilding to store extra furniture and old music equipment. Homeowners also constructed a large driveway and parking lot to accommodate the tour bus and two panel trucks used in Mr. Bridges's entertainment business.

In addition to parking the tour bus and panel trucks on the property, Mr. Bridges and his employees used the Steelebrook Acres property as a gathering place prior to and after tours. Five of Mr. Bridges's employees typically joined him on tour including two guitarists, a drummer, a stage manager, and a bus driver. These and other employees boarded the tour bus at Homeowners' property, parking anywhere from four to nine additional vehicles on the property for the duration of their trips. These vehicles remained parked on the Steelebrook Acres property for days or weeks depending on the length of the tour. A West-Coast tour,

for example, might last for six weeks. The gathering of employees, the parking of their vehicles for extended periods, and the parking of the large tour bus and panel trucks on the Steelebrook Acres property eventually drew the ire of Homeowners' neighbors.

The plaintiffs/appellees ("Neighbors"), Lonnie Roberts, Renae Roberts, Judy Wood, John Wood, Barbara Herklotz, Robert Herklotz, Charles Coggins, Kathy Coggins, John Lewis, and Tennessee Rural Health Improvement Association, instituted this action seeking to enjoin the use of Homeowners' property in connection with Mr. Bridges's music business.[1] Neighbors alleged several violations of the restrictive covenants governing Steelebrook Acres including: (1) the construction of a large outbuilding less than twenty-five feet from the side boundary line of Lot 18, (2) the use of the outbuilding for commercial purposes, (3) the operation of a music business on the property, and (4) the construction of a parking lot with concrete curbs to accommodate business and employee vehicles. Neighbors asserted Homeowners' use of Lot 18 as a "staging area" damaged the value of their properties, disrupted the neighborhood, and created an "unsightly atmosphere." Their complaint accordingly sought permanent injunctive relief prohibiting the use of Homeowners' property for commercial purposes, ordering Homeowners to remove the large outbuilding recently constructed on their property, requiring Homeowners to remove the "commercial" parking lot and driveway, and directing Homeowners to restore their property to its residential character. In their answer, Homeowners admitted parking several vehicles and a bus on the property but denied violating any of the restrictive covenants. Litigation ensued.

Homeowners eventually filed a motion for summary judgment supported by a memorandum of law, a statement of undisputed facts, and other evidentiary filings. Homeowners admitted parking a tour bus and other vehicles on their property but argued neither the existence of the parking lot nor the parking of vehicles used in a commercial enterprise violated the restrictive covenants. Homeowners further asserted the undisputed facts showed the construction and use of the outbuilding did not violate the restrictive covenants because the outbuilding was being used to store non-commercial items, Homeowners could not convert the outbuilding to an office or studio without major alterations, and the outbuilding was not a part of the home. Neighbors countered with a memorandum of law, a response to Homeowners' statement of undisputed facts, a statement of additional undisputed facts, and other evidentiary filings.

The trial court granted partial summary judgment in favor of Homeowners. The court concluded the undisputed facts demonstrated Homeowners were entitled to judgment as a matter of law with respect to all violations relating to the construction of the outbuilding. The court explained the outbuilding was not "part of a home;" rather, the undisputed facts

_____

[1]Additional plaintiffs joined the lawsuit but later non-suited their claims.

showed the outbuilding was a freestanding accessory building. Homeowners therefore did not violate the restrictive covenant prohibiting the construction of "any home . . . on any tract where any part of said home is nearer than 25 feet to the side boundary line of said tract." The trial court, however, denied Homeowners' motion for summary judgment on the remaining allegations.

The parties proceeded to a bench trial in March 2010, focusing their arguments on the construction of the expanded parking lot and driveway, the use of the parking lot and driveway, and the use of the outbuilding. The trial court ruled in favor of Neighbors in part, holding that Homeowners impermissibly used the Steelebrook Acres property for several non-residential purposes. The court's written order stated, in pertinent part:

3. The Court finds that the defendant's property was already serviced by a driveway adequate for residential purposes prior to the addition of the wide driveway and parking lot addition by the defendants. The Court finds that it is appropriate to remove the newer driveway and the portion of the parking lot that extends southward of the Bridges' house and back towards Roseland Drive. What makes it look far less residential is the extreme width of the driveway and it being bordered by the high commercial curbing. The Court has never observed such curbing in a residential area, especially in a rural residential area. But the wide entrance and the parking lot in the second driveway sticks out like a sore thumb in the aerial photograph [included in the trial exhibits].

. . . .

5. The Court finds that the parking of the two white trucks with touring equipment and merchandise on the property is a commercial use prohibited by the restrictions and both of them are prohibited from being parked on Defendants' property located in Steelebrook Acres, Section 1, Lot 18. The parking of the same vehicles would be permitted for purely residential and family purposes.

6. The Court finds that the bus is not used for family recreation or vacation purposes, so the greater weight of the evidence favors it being a commercial vehicle, and the parking and servicing of it on this property is a commercial use of the property in violation of the property restrictions and is prohibited by this Order.

. . . .

8.      The Court finds that the storage of musical equipment owned by the family, but not now being used in the business, is not a commercial use that violates the restrictions.

9.      The Court finds any assembling of persons and parking [of] employee vehicles for the departing or ending of a tour on the Bridges' property is a commercial endeavor prohibited by the restrictions.

10.      The Court finds that there is nothing offensive about the storage building. The Court has already found that it does not violate the side lot requirements. As long as it is not used for some purpose, such as a recording studio or to store a large volume of merchandise being routinely and regularly loaded and unloaded to and from trucks, and is used for storage of family possessions, it's not a violation of the covenants and restrictions.

11.      The Court finds that this residential piece of property has been used for some two or three years now as a staging area for putting together the employees and equipment for departure on short or long tours[, which] is an offensive commercial use that justifies this Court exercising its jurisdiction, and there is a violation of the Restrictive Covenants.

The court prohibited Homeowners from parking the tour bus and panel trucks on the property unless thereafter used exclusively for residential and recreational purposes, prohibited Mr. Bridges's employees from gathering on the property prior to or following a tour, prohibited non-familial employees from parking their vehicles on the property while out on tour, required Homeowners to remove a portion of the expanded parking lot and driveway, and ordered Homeowners to restore a portion of the property to its preexisting state with grass and vegetation. The court also ordered Homeowners to pay court costs. Homeowners timely appealed.

Neighbors filed a motion for discretionary costs pursuant to Rule 54.04(2) of the Tennessee Rules of Civil Procedure prior to the filing of Homeowners' notice of appeal.[2]

---

[2]Rule 54.04(2) of the Tennessee Rules of Civil Procedure provides:

(continued...)

The motion alleged Neighbors incurred discretionary costs totaling $1,614.50, "evidenced by the verified expense report" attached to and incorporated by reference into the motion. The motion further stated that the "Bill of Costs" was "sworn to by the undersigned as the costs and expenses requested were accurate, reasonable and were necessary for the preparation and/or the trial in this case and that those services which costs are represented were actually performed." Neighbors' attorney, William S. Fleming, signed the motion and attached a "bill of discretionary costs" detailing the five expenses Neighbors sought to recover. Later, Neighbors filed copies of five invoices supporting the expenses set forth in the Rule 54.04(2) motion.

Homeowners argued the trial court should not award Neighbors discretionary costs for two reasons: (1) Neighbors did not file an affidavit detailing the costs, verifying the costs were accurate, verifying the costs had actually been charged, or demonstrating the costs were necessary and reasonable; and (2) Neighbors were not "prevailing parties" entitled to costs because Homeowners prevailed at summary judgment on half of the issues presented. In the alternative, Homeowners argued Neighbors should recover only fifty percent of the costs detailed in their bill of costs because Neighbors prevailed on only half of the claims asserted. The trial court granted Neighbors seventy-five percent of their discretionary costs in an amended order, specifically holding Neighbors did not have to support their motion with an affidavit. Homeowners filed a second notice of appeal.[3]

---

[2](...continued)

Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. The court may tax discretionary costs at the time of voluntary dismissal. In the event an appeal results in the final disposition of the case, under which there is a different prevailing party than the prevailing party under the trial court's judgment, the new prevailing party may request discretionary costs by filing a motion in the trial court, which motion shall be filed and served within thirty (30) days after filing of the appellate court's mandate in the trial court pursuant to Rule 43(a), Tenn. R. App. P.

Tenn. R. Civ. P. 54.04(2).

[3]To the extent our appellate rules envision a separate appeal from the grant or denial of discretionary costs under Rule 54.04(2), we conclude in our discretion that good cause exists to consolidate these appeals pursuant to Rule 16(b) of the Tennessee Rules of Appellate Procedure.

## II. Issues Presented

The issues before this Court, as we perceive them, are:

(1) whether the trial court erred when it found the parking of a tour bus, the parking of two panel trucks, the parking of employee vehicles, and the gathering of employees prior to and following tours violated the restrictive covenants governing Homeowners' property where such activities occurred solely in the pursuit of Mr. Bridges's music business;

(2) whether the trial court erred when it determined the mere construction and existence of a large parking lot and driveway amounted to prohibited use of Homeowners' property;

(3) whether Neighbors filed a properly supported Rule 54.04(2) motion for discretionary costs; and

(4) whether Neighbors qualified as prevailing parties under Rule 54.04(2).[4]

## III. Standard of Review

We review the judgment of a trial court in a bench trial *de novo* upon the record, according a presumption of correctness to the factual findings of the court below. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citation omitted). This Court will not disturb a trial court's findings of fact unless a preponderance of the evidence is to the contrary. *Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000) (citation omitted). Our review is *de novo* with no presumption of correctness where the trial court does not produce findings of fact. *Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. Ct. App. 1995) (citations omitted). We likewise review the trial court's resolution of legal questions *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000) (citation omitted). The construction of a restrictive covenant, which courts treat as a contract, is a question of law that we review *de novo*. *See Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship*, 993 S.W.2d 36, 39 (Tenn. Ct. App. 1998) (citations omitted).

---

[4]Homeowners argue that enforcement of the restrictive covenants governing their property would violate the equal protection and due process provisions of our state and federal constitutions, but Homeowners did not present these constitutional arguments before the trial court. We will not consider them for the first time on appeal. *See Davis v. McGuigan,* 325 S.W.3d 149, 154 n.1 (Tenn. 2010) (citing *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009).

We review an award of discretionary costs, on the other hand, for an abuse of discretion. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) (citations omitted). "The 'abuse of discretion' standard of review calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002) (citations omitted). The abuse of discretion standard does not permit this Court to second-guess the lower court's judgment or merely substitute an alternative we prefer. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citation omitted). We must instead affirm the discretionary decision so long as reasonable legal minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). A trial court abuses its discretion if it (1) applies an incorrect legal standard, (2) reaches an illogical or unreasonable decision, or (3) bases its decision on a clearly erroneous evaluation of the evidence. *Elliott v. Cobb*, 320 S.W.3d 246, 249-50 (Tenn. 2010) (citation omitted). A trial court also abuses its discretion if it strays beyond the applicable legal standards or when it fails to properly consider the factors that customarily guide a discretionary decision. *Beecher*, 312 S.W.3d at 524 (citation omitted).

## IV. Analysis

A property owner's right to own, use, and enjoy private property is fundamental. *Nollan v. California Costal Comm'n,* 483 U.S. 825, 831, 107 S. Ct. 3141, 3145 (1987); *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 545-46, 92 S. Ct. 1113, 1118-19 (1972); *McArthur v. East Tenn. Natural Gas Co.,* 813 S.W.2d 417, 419 (Tenn. 1991); *State v. Gainer,* 22 Tenn. (3 Hum.) 39, 40 (1842). Accordingly, the Tennessee Supreme Court, reflecting this country's respect for property rights . . . , held that

> every proprietor of land, where not restrained by covenant or custom, has the entire dominion of the soil and the space above and below to any extent he may choose to occupy it, and in this occupation he may use his land according to his own judgment, without being answerable for the consequences to an adjoining owner, unless by such occupation he either intentionally or for want of reasonable care and diligence inflicts upon him an injury.

*Humes v. Mayor of Knoxville,* 20 Tenn. (1 Hum.) 403, 407 (1839).

Landowners may sell portions of their real property and, in the process, may place restrictions on the future use of the property to benefit themselves

and their grantees. *Laughlin v. Wagner,* 146 Tenn. 647, 653, 244 S.W. 475, 476-77 (1922); *Beacon Hills Homeowners Ass'n, Inc. v. Palmer Props., Inc.,* 911 S.W.2d 736, 739 (Tenn. Ct. App. 1995). When properly created, these restrictions-commonly referred to as restrictive covenants-run with the land, *General Bancshares, Inc. v. Volunteer Bank & Trust,* 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000); *Maples Homeowners Ass'n v. T & R Nashville Ltd. P'ship,* 993 S.W.2d at 38, and will be binding on remote grantees when they appear in the chain of title or when the grantees actually know about the restriction when they acquired the real property. *Land Developers, Inc. v. Maxwell,* 537 S.W.2d 904, 913 (Tenn. 1976); *Hillis v. Powers,* 875 S.W.2d 273, 274 (Tenn. Ct. App. 1993).

The law, however, does not favor restrictive covenants because they are inconsistent with a subsequent landowner's free and unrestricted use of the property. Even though the courts will enforce these covenants according to the grantor's clearly expressed intentions reflected in the language of the covenant, *Shea v. Sargent,* 499 S.W.2d 871, 873-74 (Tenn. 1973); *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship,* 993 S.W.2d at 39; *Lapray v. Smith,* 804 S.W.2d 87, 89 (Tenn. Ct. App. 1990), they will construe them strictly against interfering with the landowner's use of real property and will resolve all doubts in favor of the property's unrestricted use. *Arthur v. Lake Tansi Village, Inc.,* 590 S.W.2d 923, 927 (Tenn. 1979); *General Bancshares, Inc. v. Volunteer Bank & Trust,* 44 S.W.3d at 540. The courts will also refrain from extending a restrictive covenant to any activity not clearly and expressly prohibited by its plain terms. *Turnley v. Garfinkel,* 211 Tenn. 125, 130, 362 S.W.2d 921, 923 (1962); *Beacon Hills Homeowners Ass'n, Inc., v. Palmer Props., Inc.,* 911 S.W.2d at 739.

The courts will likewise construe unambiguous restrictive covenants using the established principles used to construe written contracts. *Maples Homeowners Ass'n, Inc. v. T & R Nashville Ltd. P'ship,* 993 S.W.2d at 39; *Hicks v. Cox,* 978 S.W.2d 544, 547 (Tenn. Ct. App.1998). Accordingly, they will refrain from using parol evidence to vary the covenant's terms or from otherwise looking beyond the covenant's language to determine its scope. *Jones v. Brooks,* 696 S.W.2d 885, 886 (Tenn. 1985); *Hicks v. Cox,* 978 S.W .2d at 548. They will, however, construe restrictive covenants fairly and reasonably, *General Bancshares, Inc. v. Volunteer Bank & Trust,* 44 S.W.3d at 540; *Waller v. Thomas,* 545 S.W.2d 745, 747 (Tenn. Ct. App. 1976), and will give the covenant's terms their natural and ordinary meaning. *Hicks v. Cox,* 978 S.W.2d at 547; *Aldridge v. Morgan,* 912 S.W.2d 151, 153 (Tenn. Ct.

App. 1995).

The courts will also construe a restrictive covenant's terms in light of the context in which they appear. *Hillis v. Powers,* 875 S.W.2d at 276. When they can reasonably be construed more than one way, the courts will adopt the construction that advances the unrestricted use of the property. *Southern Adver. Co. v. Sherman,* 43 Tenn. App. 323, 327, 308 S.W.2d 491, 493 (1957). The courts will also resolve ambiguities against the party seeking to enforce the restriction, *Maxwell v. Land Developers, Inc.,* 485 S .W.2d 869, 874 (Tenn. Ct. App. 1972), *Hillis v. Powers,* 875 S.W.2d at 275, and finally they will resolve all doubts concerning a covenant's applicability against applying the covenant. *Richards v. Abbottsford Homeowners Ass'n.,* 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990).

*Barnett v. Behringer*, No. M1999-01421-COA-R3-CV, 2003 WL 21212671, at *3-4 (Tenn. Ct. App. May 27, 2003) (footnotes omitted).

### *A.  Non-Residential Use*s

The parties to this appeal broadly dispute whether a restrictive covenant providing that all lots in a subdivision shall be "for residential purposes only except that such restrictions shall not prevent farming operations except no swine will be allowed" prohibited the complained-of uses of Homeowners' property. Much of their dispute focuses on whether the parking of commercial vehicles on a residential property amounts to prohibited non-residential use of the property. Although Homeowners used the panel trucks for non-commercial reasons on rare occasion, the evidence showed they used the trucks nearly exclusively for commercial purposes. And it undisputed that Mr. Bridges used the tour bus for purely commercial purposes. The parties disagree, however, about whether the parking of a commercial vehicle alone constitutes use of the property for non-residential purposes where commerce is not actively occurring on the premises. We conclude the parking of a commercial vehicle is an incidental use of a homeowner's property for commercial purposes which the restrictive covenants governing a property may or may not prohibit depending on the facts.

This Court has previously held that the restriction of permitted uses to "residential purposes only" means a property "is limited to use for residential, as opposed to commercial or other purposes." *Parks v. Richardson*, 567 S.W.2d 465, 470 (Tenn. Ct. App. 1977); *see also Carr v. Trivett*, 143 S.W.2d 900, 903 (holding that a restrictive covenant providing that property "shall not be used except for residential purposes" is "clear and unambiguous and cannot be reasonably construed otherwise than as a prohibition against the use of the property

for any purposes other than for residential purposes"). Tennessee courts, however, have distinguished between the principal use of a property for non-residential purposes and "the incidental use of a dwelling for purposes, not strictly residential in character, from which the owner derives some income or profit but which may not, by any fair construction, be termed a business or trade." *Carr*, 143 S.W.2d at 903. Our courts "are in agreement with the general proposition that whether an incidental use of residential property for business purposes is in violation of a covenant restricting use to residential purposes depends upon the wording of the restriction and the extent and nature of the use." *Waller v. Thomas*, 545 S.W.2d 745, 748 (Tenn. Ct. App. 1976); *see also Martin v. Bankston*, No. E2009-00993-COA-R3-CV, 2010 WL 652985, at *3 (Tenn. Ct. App. Feb. 24, 2010), *perm. app. denied* (Tenn. Sept. 2, 2010) (concluding that a home was being used for residential purposes and not commercial purposes where the defendant business owner answered the phone for service calls at home and kept his business records there but did not perform any work at the residence other than bookkeeping); *Kerney v. Endres*, No. E2008-01476-COA-R3-CV, 2009 WL 1871933, at *5 (Tenn. Ct. App. 2009) (recognizing that some uses may be allowed as incidental to a permitted use depending on the wording of a restrictive covenant but finding the nature and extent of incidental use irrelevant where a restrictive covenant included a "broad commitment to 'residential purposes' followed by an equally broad negative prohibition against 'any commercial undertaking'").

Courts in other jurisdictions have reached different conclusions on the effect of a restrictive covenant requiring use of property for "residential purposes only." Some courts interpret this and similar language as establishing "a bright line rule which prohibits any commercial or business use of property." *Metzner v. Wojdyla*, 886 P.2d 154, 157 (Wash. 1994) (en banc); *but see Hill v. Lindner*, 769 N.W.2d 427, 432 (N.D. 2009) (rejecting a "bright-line" approach and holding that "an incidental business use does not violate a covenant for residential purposes only as long as the business use is casual, infrequent or unobtrusive). This approach holds that "[a]s used in this covenant, the word 'only' is synonymous with the word "solely" and is the same as the phrase "and nothing else." *Buie v. High Point Assocs. Ltd. Partnership,* 458 S.E.2d 212, 215 (N.C. Ct. App. 1995); *but see Terrien*, 648 N.W.2d at 606 (distinguishing between a restrictive covenant permitting use for "residential purposes only" and one specifically prohibiting any commercial, industrial, or business uses). The advantage of this approach is that it establishes an easy-to-apply test; any commercial use—including the parking of company vehicles, use of a home computer to draft legal documents, use of a home office to keep records, et cetera—is prohibited no matter how slight or inconspicuous. The disadvantage is that a strict interpretation of a restrictive covenant may result in the prohibition of activities far exceeding the intent of its drafters. *See Terrien*, 648 N.W.2d at 622 (Cavanagh, J., dissenting).

A second approach avoids restricting minor or insignificant commercial activities,

focusing on the purpose of restrictive covenants "to preserve the residential character of the neighborhood and to make the neighborhood more attractive for residential purposes." *Metzner*, 886 P.2d at 159 (Guy, J., dissenting) (citing *Mains Farm Homeowners Ass'n v. Worthington*, 854 P.2d 1072 (Wash. 1993) (en banc)). This approach rejects a bright-line rule and permits incidental commercial use if the "use is in fact casual, infrequent, or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents." *Moore v. Stevens*, 106 So. 901, 904 (Fla. 1925); *accord Wood v. Blancke,* 8 N.W.2d 67, 69-70 (Mich. 1943) (quoting *Moore*, 106 So. at 904). This approach, however, requires "such additional use to be so reasonably incidental to the prescribed use and such a nominal or inconsequential breach of the covenants as to be in substantial harmony with the purpose of the parties in the making of the covenants, and without material injury to the neighborhood." *Moore*, 106 So. at 904 (citations omitted).

We adopt the latter approach to the enforcement of restrictive covenants. Courts should not infringe on the fundamental right to use one's property where there is no clear prohibition against a complained-of use. If doubt exists about whether the drafters of a restrictive covenant intended to prevent an incidental commercial use of residential property, we find it appropriate to resolve this doubt in favor of the free use of one's property. This approach is consistent with reported decisions in Tennessee endorsing a distinction between prohibited commercial uses and permissible incidental uses, as well as those recognizing that the purpose of restrictive covenants is "to protect the beauty of the neighborhood and the value of the property for residential use." *Turnley v. Garfinkel*, 362 S.W.2d 921, 923 (Tenn. Ct. App. 1962). Unless prohibited by the plain language of a restrictive covenant, we conclude the incidental use of a property for commercial purposes is permissible if it is in fact casual, infrequent, or unobtrusive and results in neither appreciable damage to neighboring property nor inconvenience, annoyance, or discomfort to neighboring residents.

We agree with the trial court that the gathering of employees, the parking of their vehicles for extended periods, the parking of the large tour bus, and the parking of panel trucks on Homeowners' property solely in the furtherance of Mr. Bridges's music business constituted use of the property for commercial purposes. *C.f. Roberts v. Lee*, 658 S.E.2d 258, 260-61 (Ga. Ct. App. 2008) (holding the constant parking of a dump truck and other commercial-use vehicles violated a restrictive covenant permitting use of the property "for residential purposes only" and specifically prohibiting commercial use). The alternative to conducting these activities on Homeowners' property would require Mr. Bridges to compensate the owner of a commercial parking lot or storage facility for the same benefits. Mr. Bridges's commercial enterprise therefore obtained a financial benefit from the use of Homeowners' property for the complained-of activities, which we conclude constitutes use of the property for commercial purposes. This commercial use, however, was incidental to

the principal use of the property as the Homeowners' residence because most if not all of Mr. Bridges's commercial activity occurred off-site.

The question that remains is whether the incidental use of Homeowners' property for commercial purposes violated the restrictive covenant at issue. Homeowners' constant albeit incidental use of the Steelebrook Acres property for commercial purposes was not casual, infrequent, or unobtrusive. The evidence, photographic and otherwise, showed that the complained-of activities occurred within the plain sight of Neighbors, caused some inconvenience to Neighbors, and detracted from the residential character of the neighborhood. Furthermore, Neighbors testified that the use of Homeowners' property as a staging area prior to and following tours at times occurred during the late evening or early morning hours and that the loud noise of the large diesel tour bus sometimes awakened them from their sleep. In contrast with the parking of a single company-owned vehicle, the incidental use of Homeowners' property was not so nominal or inconsequential as to comply with the general intent of a restrictive covenant limiting use of the property to non-agricultural residential purposes only. We therefore conclude the extent and nature of the incidental commercial use in this case supported the trial court's decision to grant Neighbors injunctive relief as set forth in its final judgment, except as discussed below.

### B. Removal of Parking Lot

Homeowners argue that, even if they impermissibly used the property for certain commercial purposes, the trial court erred when it ordered them to remove a portion of the recently expanded parking lot and driveway and to replant grass and other vegetation in the affected area. We agree. Nothing in the restrictive covenants governing the use of Homeowners' property prohibited the construction of a large parking lot or driveway; nor did the restrictive covenants require Homeowners to maintain the status quo of the property upon purchase. The mere existence of a large parking lot or driveway on Homeowners' property, no matter how unusual or "unsightly" others may consider the structures, does not alone amount to use of property for non-residential purposes. It matters not whether the parking lot is equipped with "high commercial curbing" or whether the parking lot "sticks out like a sore thumb." As the trial court correctly concluded in its oral ruling, Homeowners could have painted their house pink, which "might offend the neighbors more, but it wouldn't violate the subdivision restrictions." The same holds true here.

We disagree that the construction of a large parking lot or driveway, whatever its intended future use, amounts to a non-residential use of Homeowners' property. *See Parks v. Richardson*, 567 S.W.2d 465, 470 (Tenn. Ct. App. 1977) (concluding that a covenant restricting the use of real property to residential purposes only did not prohibit the construction of multi-unit residential structures such as apartment buildings, duplexes, or

-13-

condominiums but did exclude any use of those buildings as a hotel, motel, or boarding house). It is only use of the parking lot or driveway for non-residential purposes that violates the restrictive covenants. *See id.* As the trial court implied in its judgment, the restrictive covenant at issue would not prohibit Homeowners from parking on their property panel trucks used for residential purposes only or a tour bus used solely for family recreation or vacation. Likewise, nothing in the restrictive covenant prohibits Homeowners from constructing and maintaining a parking lot or driveway large enough to accommodate such vehicles so long as the property is being used for residential purposes only. We therefore conclude the trial court erred when it found the construction and continued existence of the parking lot and driveway amounted to a prohibited use of Homeowners' property for non-residential purposes. The grant of injunctive relief requiring Homeowners to remove a portion of the recently expanded parking lot, to remove the recently constructed driveway, and to replant grass and vegetation in the affected area is reversed.

### C. Discretionary Costs

Trial courts possess wide discretion to award discretionary costs. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998) (citations omitted). This Court will not interfere with a trial court's decision "except upon an affirmative showing that the trial court abused its discretion." *Id.* (citations omitted). "Generally, trial courts award such costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion." *Id.* (citations omitted). "The successful party is not, however, automatically entitled to an award of costs." *Id.* (citations omitted). Courts may apportion discretionary costs among the litigants as the equities of the case demand. *Id.* (citations omitted). "Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm." *Id.* (citation omitted). "Moreover, on appeal, the appellant bears the burden of showing that the trial court abused its discretion in its assessment of costs." *Id.* (citation omitted).

Homeowners attack the trial court's award of discretionary costs on two fronts.[5] Homeowners first submit the trial court abused its discretion in awarding discretionary costs because Neighbors did not file a properly supported Rule 54.04(2) motion. Homeowners contend Rule 54.04(2) requires the prevailing party to submit without exception an affidavit detailing the requested costs, stating that the costs are accurate, stating the prevailing party actually incurred the costs, and demonstrating the costs are necessary and reasonable. Homeowners submit, in the alternative, the Neighbors did not qualify as prevailing parties under Rule 54.04(2) because Homeowners "won half the case on summary judgment and

---

[5] Homeowners do not maintain on appeal that Neighbors should recover only fifty percent of their discretionary costs because they prevailed in only fifty percent of the litigation.

[Neighbors] won half the case at bench trial." Homeowners effectively argue that a party must succeed on more than half of the legal issues presented in a complaint in order to receive an award of discretionary costs. We will address these arguments in turn.

### i. Properly Supported Motion

The burden to satisfy the requisites of Rule 54.04(2) rests with the prevailing party. *Stalsworth v. Grummons*, 36 S.W.3d 832, 835-36 (Tenn. Ct. App. 2000) (citing *Miles v. Voss Health Care Ctr.,* 896 S.W.2d 773, 776 (Tenn.1995)).

> As a general matter, a party seeking discretionary costs can carry its burden by filing a timely and properly supported motion demonstrating (1) that it is the prevailing party, (2) that the costs being sought are included in Tenn. R. Civ. P. 54.04(2), (3) that the costs are necessary and reasonable, and (4) that it has not engaged in conduct during the litigation that would justify depriving it of the costs it is requesting.

*Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 215 (Tenn. Ct. App. 2008) (citations omitted). "Once the prevailing party has filed a timely and properly supported motion for discretionary costs, the nonmovant may challenge the motion by presenting argument and evidence contesting, *inter alia,* the reasonableness and necessity of the fees." *Stalsworth*, 36 S.W.3d at 836.

This Court has stated that a prevailing party, as a general matter, "must file a timely motion and must support this motion with an affidavit detailing these costs, verifying that they are accurate and that they have actually been charged, and that they are necessary and reasonable." *Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 36 (Tenn. Ct. App. 2002). This language, however, "does not make affidavits mandatory, it simply describes the generally followed, and preferable, practice used to support such motions." *Kendall v. Cook*, E2005-02763-COA-R3CV, 2006 WL 3501325, at *2 (Tenn. Ct. App. Dec. 6, 2006). Indeed, the plain language of Rule 54.04(2) requires only that "a party requesting discretionary costs . . . file and serve a motion within thirty (30) days after entry of judgment." Tenn. R. Civ. P. 54.04(2). It does not expressly require a prevailing party to support its motion with an affidavit.[6] *Pesce v. E. Tenn. Const. Servs., Inc.*, No. E2010-01071-COA-R3-CV, 2011 WL

---

[6]The current version of Rule 54.04(2) excludes language found in prior versions expressly requiring that an

"affidavit shall be made by the party or his duly authorized attorney or agent having

(continued...)

-15-

684549, at *10 (Tenn. Ct. App. Feb. 28, 2011). All that the case law requires is a "properly supported" motion permitting the trial court to determine whether the requested costs are reasonable and necessary.

"An affidavit is the preferable method for the prevailing party to satisfy its burden of proof," but it is not the only method. *Kendall*, 2006 WL 3501325, at *2. This Court has previously found the submission of invoices detailing the requested costs sufficient to satisfy the prevailing party's burden where the Rule 54.04(2) motion also included a declaration under the penalty of perjury. *Id.* at *2-3; *see also Stalsworth*, 36 S.W.3d at 836 n.5 (stating in a footnote that the "filing of a motion supported by invoices from the doctors who charged a fee for reserving their time shifted the burden" to the opposing party). It is not entirely clear why a party would run the risk associated with filing anything other than an affidavit, but we nevertheless conclude the filing of a verified motion supported by detailed invoices in this case was sufficient to shift the burden to Homeowners to present evidence and argument challenging the requested costs. The trial court therefore did not abuse its discretion in considering Neighbors' Rule 54.04(2) motion. The question that remains is whether the trial court properly concluded Neighbors were prevailing parties.

## ii. Definition of "Prevailing Party"

The Tennessee Supreme Court recently addressed the meaning of "prevailing party" in the decision of *Fannon v. City of Lafollette*, 329 S.W.3d 418 (Tenn. 2010). The *Fannon* court analyzed prior Tennessee cases, as well case law from the United States Supreme Court, and concluded that a plaintiff was entitled to "prevailing party" status for purposes of recovering attorneys fees where "[t]he litigation altered the 'legal relationship' between the parties and served to modify the 'behavior' of the Defendants." *Fannon*, 329 S.W.3d at 432; *see also Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 791-92 (1989) (citing *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir. 1978) (defining "prevailing party" as "one who has succeeded on any significant claim affording it some of the relief sought"); *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983) (quoting *Nadeau,* 581 F.2d at 278-79) (defining a "prevailing party" as a party earning success "'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit'");

---

[6](...continued)
knowledge of the facts, certifying that such items of costs are accurate and were reasonable and necessary to preparation and trial of the case and that the services for which such fees have been charged were actually performed."

*See Jefferson*, 104 S.W.3d at 34 (quoting Tenn. R. Civ. P. 54.04(2) (1986)); *see also Stalsworth*, 36 S.W.3d at 835.

*Daron v. Dep't of Correction,* 44 S.W.3d 478, 481 (Tenn. 2001) (finding a party to be a "successfully appealing employee" "if the employee succeeds on a 'significant claim' which affords the employee a substantial measure of the relief sought"). The *Fannon* court thereafter impliedly equated the meaning of "prevailing party" for purposes of awarding attorney's fees with the meaning of "prevailing party" in Rule 54.04(2). *See Fannon*, 329 S.W.3d at 434 (citing Tenn. R. Civ. P. 54.04(1)).

We conclude Neighbors were prevailing parties under Rule 54.04(2) because they succeeded on a significant claim which afforded them a substantial measure of the relief sought in their complaint, thereby altering the legal relationship between the parties and modifying the behavior of Homeowners. Homeowners as a result of this litigation are permanently enjoined from using their property for various non-residential purposes set forth herein, which was one of the principal goals of Neighbors' complaint. Neighbors may therefore recover discretionary costs as prevailing parties, regardless of whether this Court and the trial court ultimately concluded that the restrictive covenants did not prohibit other allegedly improper uses of Homeowners' property. Homeowners have not, on the arguments before us, demonstrated the trial court abused its discretion when it awarded Neighbors seventy-five percent of their requested discretionary costs. We therefore affirm the trial court's decision on this issue.

## V. Conclusion

The decision of the trial court is reversed in part and affirmed in part. We reverse the grant of injunctive relief requiring Homeowners to remove a portion of the recently expanded parking lot and driveway and to restore the affected land to its natural state. We affirm, however, the grant of injunctive relief prohibiting Homeowners from using their property for the non-residential purposes discussed herein, as well as the award of discretionary costs to Neighbors. Costs of this appeal are taxed equally between the appellants, Claude and Jan Bridges, and their surety, and the appellees, Lonnie E. Roberts, Renae B. Roberts, Judy Wood, John Wood, Barbara Herklotz, Robert Herklotz, Charles Coggins, Kathy Coggins, John Lewis, and Tennessee Rural Health Improvement Association, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-17-